### YOUNG v. YOUNG.

1. Where there is conflict of testimony, and the master and Circuit Judge differ in their conclusions as to the facts, it is incumbent on the appellant to show error in the Circuit decree, for *prima facie* the decree is correct. In this case, the Circuit Judge was sustained.

2. Where A, about to die, conveyed his lands to B in trust for C, all three parties signing the deed upon an expressed nominal money consideration, but with the further parol agreement that B would pay the debts of A (which was afterwards done), and only one witness signed the deed, but after the death of A, a person present at the time of the execution also signed his name to it as a witness, the deed may be insufficient to carry the legal estate to B, but it will be sustained in equity as against the heirs of A.

MR. JUSTICE McIVER *dissenting.*

Before HUDSON, J., Union, June, 1886.

The opinion fully states the case.

*Mr. D. A. Townsend,* for appellant.

*Mr. C. C. Culp,* contra.

July 19, 1887. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. One George M. Young conveyed a tract of land, containing one hundred (100) acres, to his two sons, Thomas J. Young and John H. Young, as tenants in common. Thomas J., as a man of family (wife, Amanda Young), had a house on the common property, and his brother, John H., a bachelor and in feeble health, lived in his family. Amanda M., the wife of Thomas J., made the clothes, did the cooking for the household, and kindly nursed her brother in-law, John H., through his illness until he died in August, 1884, leaving some small debts and the following collateral heirs, viz., his said father, George M., and his brothers and sisters of the whole blood, the plaintiff, Christopher C. Young, Thomas J. Young, and Mary J. Layne.

Soon after the death of John, the brother, Christopher C., claiming that he died seized of his half (50 acres) of the said tract

of land, instituted this proceeding for partition, first between
Thomas J. and the heirs of John H., and then divide John's part
among his heirs.   But the defendants, George M., the father,
and the sister, Mary J. Layne, disclaimed, the latter by letter
and the former in testimony, any interest in John's part as
his heirs at law.   So that the only question really involved
was whether the plaintiff, Christopher, was entitled to his share
as heir at law (12½ acres), as against his brother, Thomas J.,
who, being left in possession of the whole tract, claimed John's
interest under a deed from him, executed and delivered, as
alleged, in his life-time upon valuable consideration, in trust for
his wife, Amanda M., during her life, with remainder over to
her heirs.   Such a deed was produced, bearing date August 7,
1884, with the names subscribed of two witnesses, viz., those of
Charles Bolt and James M. Greer, regularly probated and record-
ed August 27, 1884.   This deed, however, the plaintiff, Chris-
topher, assailed as inoperative and void, on the ground that
James M. Greer, one of the witnesses, who was present in the
crowd the night the paper was signed and saw the parties sign it,
yet did not actually subscribe his name to the paper as a witness
until some days after, and until after the death of John H., the
donor.

It was referred to the master to take the testimony and report
the same, together with his conclusions thereon.   He took the
testimony, which is printed in the Brief, and reported: "That
the written instrument sought to be established by the defend-
ants, Thomas J. Young and Amanda M. Young, was not pro-
perly and legally executed, having but one subscribing witness;
that no trust could be created in favor of Amanda M. Young;
and furthermore, that said written instrument was without con-
sideration and in favor of a stranger; that the debts of John H.,
amounting to over $100, which were paid by the said Thomas J.,
were paid voluntarily, and the said Thomas J. had received of
the rents and profits of said land more than the amounts so paid;"
and recommended that the land be sold for partition.

Upon exceptions to this report, the cause came on to be heard
by Judge Hudson, who overruled this report, finding and ruling
as follows: "Before his death, John, being ill, called in Mr.

Bolt and had him to prepare a deed of conveyance of his undi-
vided half to Thomas in fee, upon special trusts for the benefit of
Amanda, the wife of Thomas. This was done in the presence of
half a dozen of the neighbors, one of whom held the candle. The
deed in form was an indenture signed by John, the grantor,
Thomas, the trustee, and Amanda, the *cestui que trust*; but from
some oversight Mr. Bolt alone subscribed the deed [as a witness].
Eleven days after this John died, and shortly after this James
Greer, a person present at the time of the execution, subscribed
his name as a witness, and the deed was duly probated and
recorded, having two subscribing witnesses' names subscribed
thereto. Greer says that he did not read the deed or hear it
read, but saw a paper signed by the three persons and only one
paper, which must have been this deed, * * * and that after-
wards when requested to subscribe his name as a witness, he did
so. Now, the execution of a deed must be complete before the
witnesses subscribe their names. The subscription properly
follows the complete execution of the deed, and need not be in
the presence of the grantor or at the instant of the delivery.
Their presence and observation during the process of execution
is essential, but if from accident, inadvertence, or ignorance, one
should omit just then and there to sign the attestation, I see no
reason why he could not in a reasonable time thereafter, and
before the recording of the deed, be allowed to sign and thus
perfect the deed.

"Again, the deed purports on its face to be for a valuable con-
sideration, but a very inadequate one, viz., five dollars and one
dollar; nothing is said of natural love and affection. The testi-
mony of Mr. Bolt, taken in connection with the subsequent action
of Thomas J. Young, is, in my judgment, sufficient to establish
the fact that the real consideration of the deed was an agreement
and understanding between John and Thomas that the latter
should pay off the indebtedness of the former, and this he accord-
ingly did. This gives to the deed a valuable consideration, and
in that event equity will sustain it, though signed by only one
subscribing witness. Indeed, the doctrine prevails in equity that
a deed upon a merely good consideration, though subscribed by
but one witness, will be sustained as between the parties or their

privies in blood, as in the present case. A subsequent valuable consideration will likewise support a deed even as against creditors. *Bank* v. *Brown*, 2 *Hill Ch.*, 559. I am, therefore, of opinion that, as against the plaintiff, this deed must stand," &c.

From this decree the plaintiff, Christopher C. Young, appeals upon the following exceptions:

"1. For that his honor found as matter of fact that J. M. Greer saw John H. Young sign the instrument of writing set up as a deed of trust by Thomas J. Young and Amanda Young in their answers.

"2. For that his honor found as matter of fact that certain other persons saw J. H. Young sign the same instrument, which his honor found that Greer saw J. H. Young sign.

"3. For that his honor found as matter of fact that there was a subsequent valuable consideration for said instrument of writing.

"4. For that his honor found as matter of fact that the consideration for said instrument was an agreement between John H. and Thomas J. Young that the latter should pay the indebtedness of the former.

"5. For that his honor found as matter of fact that Thomas J. Young paid the debts of J. H. Young, in accordance with an agreement to that effect with J. H. Young.

"6. For that his honor found as matter of fact that there was privity of blood between the parties to the said instrument.

"7. For that his honor did not find as matter of fact that the signing and delivery of said instrument was attested only by one witness.

"8. For that his honor held as matter of law that the said instrument must stand as against the plaintiff.

"9. For that his honor decreed that the complaint should be dismissed.

"10. For that his honor further erred in so much of his decree as announces that had the said instrument not been sustained, it would have been decreed that Thomas J. Young be repaid the amount paid by him on the debts of J. H. Young."

The first seven exceptions make questions purely of fact, and as this court has often held, and very lately repeated in the case of *Pope* v. *Montgomery*, 24 *S. C.*, 594: "It is incumbent on the appel-

lant to show that the conclusions of fact reached by the Circuit Judge are either without any testimony to support them or manifestly against the weight of the evidence. * * The utmost that can be said is, that there was conflict in the testimony, and in such case, this court rarely, if ever, interferes." We have looked through the testimony very carefully, and while we find it on some points vague and somewhat contradictory, taking it all together, we do not feel authorized to hold that any of the conclusions reached by the Circuit Judge are either wholly without evidence or against the weight of the evidence. His conclusions, therefore, must be regarded as established.

The eighth exception charges error on the part of the Circuit Judge in holding, as matter of law, that the instrument in question must stand as against the plaintiff. The view urged seems to be that the said instrument was not executed in precise accordance with the provisions of the General Statutes (section 1775) declaring legal and valid a particular form of "release" or the "purport" thereof, "If the same shall be executed in the presence of and be subscribed by two or more credible witnesses;" and in consequence of the accidental omission of one of the witnesses to subscribe his name as such at the time the deed was executed, the said instrument must be considered, as to all persons and for all purposes, as absolutely null and void as if it had never existed. Is this the correct view? It seems to us, even if the premises were conceded, that the conclusion would not necessarily follow. Without going into the question whether the facts of the case amount to a substantial compliance with the attestation law, so as to give to the deed of trust the capacity to carry the legal estate to the trustee, we cannot say that it was error in the judge to hold that it must stand as against the plaintiff.

There is no question here as to the debts of the deceased. They have been paid by Thomas J. Young. The action was not brought by a subsequent purchaser or creditor, but by a brother privy both in blood and estate. His claim as heir at law is purely technical, resting only on the alleged defect or informality as to the attestation; for if the witness Greer had signed on the night the deed was executed, there could not have been any controversy

about it.    There is no doubt as to what was the intention of the
parties or that they made an honest and *bona fide* effort to carry it
out, and supposed they had done so.    We assume, as found by
the judge, "that the real consideration between John and Thomas
was that the latter would pay off the indebtedness of the former,
which has been done."    Under these circumstances, we cannot
see that the judge committed error in holding that "equity would
sustain the deed, although subscribed by but one witness."

As an illustration.   An instrument purporting to be a mortgage,
but imperfectly executed by the omission of a seal or in some other
manner, so as to be defective in form, is wholly nugatory at law
as a valid mortgage, or as giving any interest in or claim upon
the parcel of land described.    Equity, however, not saying
that the instrument is a true legal mortgage, declares that it is
an efficient agreement to give a mortgage, and as such that it
creates an equitable lien upon the land, valid for all purposes and
as against all parties, except a purchaser of the land for a val-
uable consideration and without notice.  1 *Pom. Eq. Jur.*, § 380
and note.    And see *Story Eq. Jur.*, §§ 165, 166 ; *Love* v. *Sier-
ra Nevada Co.*, 32 *Cal.*, 639 ; *Johnson* v. *Gilbert*, 13 *Rich. Eq.*,
42 ; and *Pope* v. *Montgomery*, 24 *S. C.*, 594.

In *Johnson* v. *Gilbert, supra*, Chancellor Carroll, in deliver-
ing the judgment of the court, said: "The deed to Jesse Gilbert,
jr., furnishes satisfactory evidence, at the least, of the executory
contract for the sale of the land in fee.    With a contract thus
manifested and with actual possession by the vendee under it, his
claim to a specific execution of the agreement could not be resist-
ed.   In this jurisdiction (equity) the vendee, under such circum-
stances, is treated as the equitable owner.   He may transfer his
interest in the land, may devise it as land, and as land it passes
by descent to his heirs."   *Story Eq. Jur.*, §§ 783, 789.

Can there be serious doubt that there was valuable considera-
tion ?    The Circuit Judge found as matter of fact that there was,
and this court has held that in a conflict between referee and Cir-
cuit Judge on a question of fact in a case in chancery, the latter
is *prima facie* right.   *Maner* v. *Wilson*, 16 *S. C.*, 469.   The
judge says: "The testimony as to Thomas as to the full extent
of the consideration is excluded ; but the testimony of Mr. Bolt,

taken in connection with the subsequent action of Thomas J. Young is, in my judgment, sufficient to establish the fact that the real consideration of the deed was an agreement and understanding between John and Thomas that the latter should pay off the indebtedness of the former, and this he accordingly did."

It was incumbent on the plaintiff to overthrow this conclusion thus *prima facie* established. Did he do so? We think not. Leaving out the testimony of Thomas, we agree with the Circuit Judge, that all the circumstances of the case tend to confirm the testimony of Bolt. The deed says nothing about "love and affection." It mentions a small valuable consideration. It contains the usual warranty. All the parties signed, which, as we think, is not usual in simple deeds of gift. The debts were actually paid before the action was brought, and we fail to see the evidence to authorize the very general statement of the master, that "Thomas had received of the rents and profits more than the amount so paid." While the board, attention, washing, and nursing must go for nothing as gratuitous, we are not willing to assume that the payment of the debts was also gratuitous and voluntary. In *Pope* v. *Montgomery, supra,* it was held that "an informal paper, purporting to be an assignment of the maker's interest in a tract of land, witnessed by only one witness, but based upon a valuable consideration, is sufficient in equity to transfer such interest, and a proper conveyance could be enforced."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCIVER, *dissenting.* I regret to say that I am unable to concur in the conclusion reached in the opinion prepared by Mr. Justice McGowan. I propose, therefore, to indicate briefly the grounds of my dissent, as want of time forbids anything like an extended discussion of the questions involved.

It seems to me clear that the paper set up by respondents as a deed is fatally defective, as lacking one of the statutory requirements—two subscribing witnesses—necessary to the validity of such a paper. I do not see how Greer can, under any proper view of the matter, be regarded as such a subscribing witness as

is contemplated by the statute. At the time the paper was signed he certainly was not called upon to act as a subscribing witness, nor did he put his name to the paper until after the death of the alleged grantor. He was a mere by-stander, a casual observer, along with several others, and when examined as a witness in this case he said: "I did not see the parties sign, seal, and deliver the deed. Saw them sign some paper, but don't know that this is the paper. Saw them sign a paper when Mr. C. Bolt was there. I wasn't in the house: was standing in the door. Don't know as I saw them sign but one paper when Mr. Bolt was there. Never saw them sign but one paper when Mr. Bolt was there; this must be the paper." When he was asked by T. J. Young, the nominal grantee, after the death of the alleged grantor, to sign the deed as a subscribing witness, he says: "I just signed the deed to accommodate T. J. Young; thought there would be no hereafter about it; didn't pay much attention to it."

It seems to me that it would be a perversion of terms to characterize this witness as such a subscribing witness as is required by the statute. One of the objects of requiring subscribing witnesses is to identify the paper, and here it is manifest that the witness, Greer, could not identify the paper which he saw signed with the paper which he signed as a witness, except by a process of reasoning, which, to say the least of it, is not very satisfactory when we see from the testimony that he was not called upon to pay any attention to what was going on, and when he did not, in fact, do so, "wasn't in the house; was standing in the door," evidently not expected or expecting to act as a witness, and therefore not observing what was going on. Hence he very properly testifies that while he saw some paper signed, he could not say that it was the paper offered as a deed in this case; and the fact which he adds, that he "never saw them sign but one paper when Mr. Bolt was there," is very far from proving that there was no other paper signed.

But, in addition to this, the undisputed testimony is that Greer never put his name to the paper until after the death of the alleged grantor, and in this respect the case differs very materially from the case of *Pope* v. *Montgomery* (24 *S. C.*, 594), where, however, the point was not decided. There the alleged

deed, after having been signed by the grantor in the presence of a single subscribing witness, was afterwards acknowleged by the grantor, in the presence of the same witness and another, who then subscribed his name as a witness; while here the second witness never subscribed his name as such until after the death of the alleged grantor. So that even assuming that a paper executed in the manner described in *Pope* v. *Montgomery*, would become a valid deed from the time it was signed by the second witness, and acknowledged by the grantor in his presence, and in the presence of the other subscribing witness, it does not by any means follow that a paper signed as the one here in question was, would become a valid deed. It certainly was not such at the time of the death of the alleged grantor, for it was then signed by only one subscribing witness, and it is not easy to perceive how it could acquire the qualities of a valid deed after his death, and certainly not by the act of the nominal grantee in procuring another person to sign as a subscribing witness.

But it is urged, that even supposing that the paper propounded as a deed was invalid as such, yet equity, regarding it as an agreement to convey will enforce such agreement and practically give it the effect of a conveyance, or that it will correct the mistake made by the omission of, what is termed, one of the necessary formalities. I do not understand distinctly upon which of these grounds it is proposed to rest the decision. If the latter, then it seems to me there is an utter lack of any testimony to support it. The Circuit Judge, in his decree, does say that "from some oversight Mr. Bolt alone subscribed the deed as a witness," and, in the opinion of the majority of this court, the omission of one of the witnesses to sign is spoken of as an "accidental omission"; but I am unable to discover any testimony even tending to show that such omission was the result of either oversight or accident. On the contrary, the testimony tends to show that what was done, was done deliberately and purposely, and that nothing was omitted which was intended to be done. The testimony fails to show the slightest reason to suppose that the parties ever intended to have two subscribing witnesses, and that such intention was frustrated by any sudden change in the condition of the alleged grantor, then lying upon what proved to be his death-bed,

or any other circumstance. There was no lack of persons present to act as subscribing witnesses, if an additional one was wanted, and it is difficult to conceive of any reason for the omission, except that it was not deemed necessary. The fact that the paper was formally acknowledged by the parties in writing before a notary public, tends to show that the parties regarded that as a sufficient mode of authenticating the paper, and hence they did not deem it necessary to have, and did not intend to have, two subscribing witnesses. The omission clearly was the result of ignorance of the law merely, and was not the result of any mistake or accident, and hence the second ground upon which it is proposed to uphold the paper as a deed cannot be sustained.

More reliance, however, seems to be placed upon the first ground—that equity will regard the paper as a valid agreement to convey, and give it the effect of a conveyance. This depends, in my judgment, upon the result of the inquiry whether the agreement is voluntary or is based upon a valuable consideration. I understand the rule to be that equity will not require the specific performance of a merely voluntary agreement, but that it will do so where the agreement is based upon a valuable consideration, provided certain conditions exist which need not here be adverted to. The Circuit Judge cites 1 *Story Eq. Jur.*, §§ 165, 166, and 1 *Fonbl. Eq* , Bk. 1, Ch. 1, § 7, to show that in equity "a deed upon a merely good consideration, though subscribed by but one witness, will be sustained, as between the parties or their privies in blood." An examination of these authorities will show that the expression "*good* consideration," is not used in contradistinction to, but as identical with, *valuable* consideration. The expression is not used in either of the sections cited from Story, but it is used in the section cited from Fonblanque as follows: "Equity regards not the outward form, but the inward substance of the matter, which is the agreement of the parties upon a *good* and valuable consideration." And in a note to this passage the following language is found: "Though equity will relieve by supplying the defects of a conveyance upon a good or valuable consideration, yet it will not, if the conveyance be purely voluntary." This shows that the expression "good consideration" is not used

in contradistinction to "valuable consideration," but simply means a consideration *good* in law.

That this was the view of Mr. Justice Story may be seen by numerous passages in his great work. In section 176, he says: "But in all these cases of relief by aiding and correcting defects or mistakes in the execution of instruments and powers, the party asking relief must stand upon some equity, superior to that of the party against whom he asks it. If the equities are equal, a Court of Equity is silent and passive. Thus equity will not relieve one person, claiming under a voluntary defective conveyance, against another, claiming also under a voluntary conveyance, but will leave the parties to their rights at law." Again, in section 793*a*, this writer says: "We have already had occasion to remark, throughout the whole of the preceding discussion, respecting bills for specific performance of contracts, that it has been constantly supposed that the contract was one founded upon a valuable consideration in the contemplation of law. In respect to voluntary contracts, or such as are not founded in a valuable consideration, we have already had occasion to state that Courts of Equity do not interfere to enforce them, either as against the party himself, or as against other volunteers claiming under him. Thus, for example, if a party should enter into a voluntary agreement * * to convey * * * certain real estate Courts of Equity would not assist in enforcing the agreement, either against the party entering into the agreement or against his personal representatives, for the party contracted with is a mere volunteer. The same rule is applied to imperfect gifts * * * and to voluntary defective conveyances." See also the various sections therein cited.

It seems to me clear, therefore, that unless the paper propounded as a deed, under which respondents claim, was founded on a valuable consideration, it cannot be given, even in equity, the effect of a conveyance. Whether there was such valuable consideration is a question of fact upon which the master and the Circuit Judge differ. It appears to me, after a careful examination of the evidence, that there is but little, if any, testimony to show that the alleged deed was founded upon a valuable consideration, and, therefore, I think the conclusion of the master rather than that of the Circuit Judge should be adopted. The con-

sideration claimed as the foundation of the deed is of a twofold character.    1st. The services alleged to have been rendered to the deceased, John H. Young, by the defendant, Amanda M. Young, in his life time.    2nd. The alleged agreement of the defendant, Thomas J. Young, to pay the debts of the deceased.

As to the first, after striking out the testimony of Amanda M. Young as to her transactions with the deceased, which was not only clearly incompetent, under section 400 of the Code, but was ruled so to be both by the master and the Circuit Judge, it is manifest that there is not a shadow of testimony tending to show that Mrs. Young had any such claim against deceased for services rendered, as would constitute a valuable consideration for the deed.    The testimony of Bolt, when he was re-called, so far from supporting this view, tends the other way.    He says that "when I drew up the paper, J. H. Young spoke of the kindness of Mrs. A. M. Young, and said he did not know how he could have got on without her. * * *    He spoke very gratefully of Mrs. A. M. Young's kindness."    Now, there is not only a significant absence of anything in this testimony tending to show that J. H. Young either expected or intended to pay for this kindness, but, on the contrary, the language used much more naturally conveys the idea that he was thankful for this gratuitous service.    People do not usually characterize services rendered for pay as a kindness, which calls for expressions of gratitude.    It seems to me that the testimony shows that such services as were rendered the deceased by Mrs. Young were prompted by a feeling of kindness for her husband's afflicted brother, and without any expectation or intention on the part of either that they should be paid for; and, therefore, however commendable it may have been on the part of Mrs. Young thus to administer to the wants of one so closely connected with her, and living in the house with her, it affords no foundation for any such legal claim as would constitute a valuable consideration for the deed.    That which was intended as a gratuity cannot afterwards be converted into a charge.

The second ground upon which it is urged that there was a valuable consideration for the deed, is the alleged agreement on the part of Thomas J. Young with J. H. Young to pay the debts of the latter.    This is also without the slightest foundation in the evi-

dence, after the testimony of Thomas J. Young, which was clearly incompetent, as to this point, and ruled so to be, is stricken out. Bolt, the witness who drew the paper, and who would most naturally know what occurred, does not speak of any such agreement. Nothing of the kind is inserted in the alleged deed, and Bolt says that he drew the paper "in accordance with his wishes and desires." This witness, when recalled a second time, says that *he* told deceased a *deed of gift* would not hold good as long as he owed debts, "and he said that T. J. Young would, of course, have them to pay. * * * I mean by the deed of gift the deed I drew up and witnessed."

Now, this testimony not only shows that the deceased never made any allusion to the payment of his debts until his attention was directed to it by the witness, but it also shows that the paper was intended and understood to be a deed of gift, and was so designated at the time of its execution, and the further statement that such a paper would not hold good until the debts were paid, only goes to confirm my view that the paper in question was not, in fact, based upon a valuable consideration, and was not intended to be so, but was intended to be just what it was called at the time—a deed of gift—and the advice given by the scrivener that it would not hold good until the debts were paid, while, to a certain extent, very appropriate to a deed of gift, would have been wholly inapplicable to a deed based upon a valuable consideration. For if the deed had been properly executed, and was voluntary, while it would not have been good as against the creditors as long as the debts were unpaid, it would have been good as between the parties and their heirs; whereas if the deed had been founded upon a valuable consideration, it would have been good against creditors as well as heirs.

Again, it is urged that even if there was no valuable consideration at the time the deed was executed, yet there was a subsequent valuable consideration in the actual payment of the debts of J. H. Young by T. J. Young subsequent to the death of the former, which would be sufficient to support the deed even against creditors; and the case of *Bank* v. *Brown*, 2 *Hill Ch.*, 558, is cited to sustain that view. In that case a husband, while in debt, made a deed, in form voluntary, settling on his wife certain

property. The husband was at the time negotiating the sale of certain real estate acquired by his wife, which sale was afterwards made. Upon a bill by the creditors of the husband to set aside the deed of settlement as voluntary, parol evidence was received to show that the real consideration of the deed of settlement was the renunciation by the wife of her inheritance on the sale of the land acquired by the husband through her ; and this constituted a valuable consideration for the deed of settlement sufficient to support it as against the claims of creditors. It is not easy to perceive how the decision in that case applies to the question involved here. The negotiation for the sale of the wife's land was going on at the time the apparently voluntary deed of settlement was made, and if the testimony showed that the wife was induced to renounce her inheritance by the expectation that she would be provided for by the deed of settlement, that could scarcely be properly called a subsequent valuable consideration, even though the execution of the deed of settlement did precede the actual renunciation of the wife's inheritance.

But even conceding that the consideration was subsequent, I do not perceive the application of that case to this. Here the proposition is, that although the deed may have been voluntary in the first instance, yet it has subsequently acquired the character of a deed resting on a valuable consideration by reason of the fact that the grantee has subsequently paid voluntarily, or been made to pay, debts of the grantor. While I do not propose to discuss, I am not prepared to concede, the correctness of this proposition. For the deed, if properly executed, even though purely voluntary, would be perfectly good as between the parties and their heirs—the parties here contending—and it would only be assailable by creditors. Now, if the deed was originally perfectly good and valid between the parties here contending, I do not see how it could be made any better, *as between such parties*, by the fact that those claiming under it have been compelled to pay, or have voluntarily paid, third persons debts held by them against the grantor.

But, waiving this, it seems to me that the fundamental fact upon which this proposition rests, to wit, that Thomas J. Young has subsequently paid the debts of J. H. Young, the alleged

grantor, has not been established. On the contrary, the master finds, and the testimony fully sustains his finding, that the payment of the debts of J. H. Young by T. J. Young was voluntary, and that he had received from the rents and profits an amount more than sufficient to pay said debts. It cannot be properly said that T. J. Young has paid anything towards the debts of J. H. Young, but he has simply applied money coming into his hands which belonged to the estate of J. H. Young to the payment of such debts.

It seems to me, therefore, that in no view of the case can the paper, purporting to be a deed, under which respondents claim, be supported, and, on the contrary, I concur in the findings of the master, both of fact and law, and think the plaintiff is entitled to have partition of the land.