## 15500

HUNT v. SMITH *ET AL.*

(24 S. E. (2d), 164)

130

March, 1942.

*Mr. W. H. Nicholson* and *Mr. J. Perrin Anderson,* both of Greenwood, Counsel for Appellant, ▉

*Mr. T. Frank McCord* and *Messrs. Grier, McDonald & Todd,* all of Greenwood, Counsel for Respondent, ▉

February 5, 1943.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER:

This is a suit in equity to set aside a deed made by the appellant to one T. T. Cromer, respondents' testator. The deed is attacked on the ground of fraud on the part of the grantee in its procurement. The appellant also alleges that the deed was not executed as required by law and that as against any title which said deed might have vested in the grantee, she had acquired title by adverse possession.

The respondents pleaded four defenses: (1) the Statute of Limitations; (2) laches; (3) the Statute of Frauds; and (4) title acquired by the grantee by adverse possession.

The case was heard before the Master in Equity for Greenwood County. He concluded that the plaintiff made out a case of fraudulent procurement of the deed, but that the maintenance of the action by the plaintiff was barred by the Statute of Limitations. He rejected the defenses based on laches and the Statute of Frauds, and concluded that neither the plaintiff nor the defendant had acquired title by adverse possession.

The Circuit Judge concurred in the findings of fact and conclusions of law with which we deal on this appeal, with the result that a decree has been made refusing the relief prayed, solely upon the legal ground that the Statute of Limitations applies.

Exceptions to the decree of the Circuit Court have been taken by the appellant and the respondents.

The facts involved in this litigation are fully set forth in the report of the Master and in the decree of the Circuit Court. The testimony has not been printed in the transcript, and our assumption is that except as to a matter which does not enter into the conclusions we have reached, counsel on both sides are satisfied with the facts as so stated.

We will state only such of the pertinent facts as are necessary to an understanding of the conclusions we state.

This action was commenced in January, 1940. The deed which is attacked by the appellant is dated October 25, 1923, and covers a residence property in which the appellant with her husband was residing at the time of the making of the deed and in which she has continuously resided. The deed was recorded February 23, 1925.

On the question of the validity of the execution of the deed, appellant's husband testified that the deed was signed by his wife upon his insistence, and against her wish; that he carried the instrument to each of the subscribing wit-

nesses and requested them to sign as witnesses to his wife's signature. He assured each that the signature was that of his wife. The regularity and sufficiency of the probate are not questioned. It is upon these facts that the appellant attacks the sufficiency of the execution of the deed and seeks to invalidate the same.

The applicable statute, Code, 1942, Section 8694, provides that a deed "shall be executed in the presence of and be subscribed by two or more credible witnesses." Construing this statute we have held that literal compliance with the statute is not required. It is not necessary, for example, that the witnesses must actually sign their names in the presence of the grantor, or that they sign in the presence of each other. It is sufficient if the grantor executes and delivers the instrument in the presence of one subscribing witness, and afterwards acknowledges to the other witness his execution and delivery of the deed such other witness then subscribing his name. *Little v. White, et al.*, 29 S. C., 170, 7 S. E., 72.

And in equity a deed will be sustained against the heirs of the grantor where only one witness signed the same and the second witness (who saw the execution of the deed) failed to sign the instrument until after the death of the grantor. *Young v. Young,* 27 S. C., 201, 3 S. E., 202.

In the present case one of the witnesses had died before the trial of the cause. The other witness was living, but was not produced.

The law does not look with favor upon an attack upon an instrument involving the transfer or devolution of real estate because of mere informalities or slight irregularities connected with compliance with the statutory requirements of execution and attestation. Subscribing witnesses to an instrument usually have no occasion to charge their minds with the circumstances surrounding its execution, and the fallibility of the human memory is

such that if upon recollection alone the validity or transfers of real estate could be attacked without the aid of legal presumptions to uphold the instruments, titles to real estate would hang upon a very slender thread.

In the present case the witness who signed the probate is the one who has died. His signature is not questioned, and in signing the probate he specifically certified that he saw the testator sign, seal and deliver the instrument in question, and that he with the other witness attested the same.

To such a certificate the law attaches a presumption of truth. It is not an irrebutable presumption, but it is a presumption, that has the force and effect of evidence, and such evidence should not be lightly disregarded when the instrument is attacked.

We are satisfied with the ruling of the Circuit Judge that the testimony of appellant's husband, given as his recollection of the transaction, is not sufficient to overcome the formal sufficiency of the execution of the deed, and the presumption of truth that attaches to the certificate and affidavit of the subscribing witness.

The principal ground upon which the appellant attacks her deed arises out of the following state of facts (we are not attempting to state all of the facts) :

The grantee in the deed was a brother-in-law of appellant's husband. He represented to the appellant and her husband that he desired to purchase a piece of property which was being sold in proceedings in the Probate Court for Greenwood County and that he desired to obtain a deed to appellant's property "with the view of obtaining help in purchasing" the property so to be sold. He made the proposal to appellant's husband. When the latter presented the matter to the appellant she was not in favor of making the deed, but at the request and upon the insistence of her husband, she executed and delivered the instrument. At the time of the transaction, and at the sug-

gestion of the grantee, a note was given to the appellant for the sum of $2,250.00, which is the consideration expressed in the deed. But the grantee assured appellant's husband that he would not record the deed, and that he would re-convey the property to the appellant within five years. The note is alleged to have been payable five years after date.

The grantee did not acquire the property which was to be put up for sale as above stated. When thereafter he was asked to reconvey the property he stated that he was going to buy certain other property and that he would give appellant's husband a job. But he did not buy the other property, nor did he give appellant's husband a job.

Several times thereafter the grantee was again asked to reconvey the property, but each time he put off the matter by promises to look after it at a later date.

As hereinbefore stated, appellant continued in the occupation of the house, and at no time did the grantee demand possession or the payment of rent. He did however begin paying taxes on the property beginning with the year 1925, which in itself, along with other subsequent developments, is consistent with the alleged fraudulent scheme. The record does not explain the circumstances or reasons that led to this action on his part or disclose any discussion between the appellant and the grantee as to the discontinuance of payment of taxes by the one and their payment by the other.

There is other testimony in the case, detailed in the Master's report and in the Circuit Court decree, bearing upon this subject, and upon consideration of the whole record we are satisfied that we would not be warranted in disturbing the concurrent finding of the Master and of the Circuit Judge that the appellant made out a case of fraud in the procurement of the deed by the grantee. Nor have we any doubt about the correctness of the conclusion that unless there are other obstacles to the granting of a decree cancelling the deed, the same should be invalidated.

We do not agree with the legal conclusion of the Circuit Judge that the maintenance of this action is barred by the Statute of Limitations. The applicable provision is Section 388(6) of the Code (1942), wherein it is provided as follows: "(6) Any action for relief on the ground of fraud, in cases which, heretofore, were solely cognizable by the Court of chancery, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

The question is: When did the appellant discover "the facts constituting the fraud?"

The fraud with which we are dealing in this case is the fraudulent procurement of the deed. The testator died in 1939. He left a will in which he devised successive interests in the property in question to his grandchildren and their "bodily heirs," with remainder over in the event that there are no such heirs.

This will, according to the evidence adduced on behalf of the appellant, furnished the first specific information obtained by her that the grantee definitely repudiated his trust obligation to reconvey the property to her, and that he intended permanently to deprive her of the same.

The grantee's failure to reconvey the property within the time agreed, and his failure subsequently to carry out his successive promises to make the reconveyance did not constitute notice to the appellant of the fraudulent scheme which the grantee had conceived. Although his nonaction and his broken promises should have given rise to suspicion, and would have warranted and indeed called for the institution of the action at a much earlier date, it would be putting a premium on dishonesty to hold in this case that because the appellant hung on to the hope (even a hope punctured with doubt and fear) that ultimately the grantee would carry out his assurances, she was under a legal obligation to determine that the grantee had under-

taken to defraud her of her property. See *Beattie v. Pool,* 13 S. C., 379.

There is nothing in the record to indicate that the transaction involving the execution and delivery of the deed was handled or supervised by an attorney, and we are in accord with the evident view of the Master and of the Circuit Judge that the giving of the note was merely one of the means used by the grantee to lull the appellant, who probably had little knowledge of matters of this sort, into a sense of safety and security. Certainly the nonpayment of the note, whether regarded as an instrument in the fraudulent scheme or otherwise, cannot be said to amount to notice of the facts constituting the fraud. If it has any persuasive force at all, such nonpayment appears to us to add weight to the claim of the appellant as to the arrangements and circumstances under which the deed was made.

Another circumstance supporting the view that knowledge of the fraudulent scheme of the grantee had not been brought home to the appellant is furnished by the incident detailed in the Master's report relating to the construction of a power line over the property in question, and the cutting of trees in that connection. This incident occurred in 1937, less than six years before the institution of this action. How much of the incident was brought home to the appellant and her husband is not entirely clear, but it does appear that at the time in question, appellant's husband asserted his wife's title to the property, and that this assertion of title was brought home to the grantee, without any action on his part by way of assertion of the right to rent or of the right to possession.

We recognize that perhaps all of the factors in this situation are not encompassed by the testimony that has been adduced. The death of the grantee, and the consequent inadmissibility of testimony relating to the transaction that might have been given by the appellant, are doubtless partly responsible for the unsatisfactory presentation of the un-

derlying facts. We can only take the record as we find it, and we think that the conclusions that the grantee undertook to fraudulently deprive the appellant of her property, and that the appellant was under no legal compulsion before the probate of the grantee's will, to recognize in the actions of the grantee the fraudulent purpose that has been deduced from the testimony, are concomitant and equally compelling.

We are in accord with the view of the Circuit Judge that the doctrine of laches, independently of the Statute of Limitations, is not a bar to the maintenance of this action, for the reasons already stated in dealing with the Statute of Limitations. This doctrine is fully discussed in the case of *Charleston Library Society et al. v. Citizens & Southern National Bank, etc., et al.,* 201 S. C., 447; 23 S. E. (2d), 362. The principles there stated are distinctly applicable in the present case.

In the above light it is unnecessary for us to deal with the exceptions relating to adverse possession.

The conclusions hereinabove stated take no account of the taxes paid by the grantee beginning in 1925. However, no question thereabout is presented by the pleadings, nor does it appear that the subject was otherwise dealth with in the proceedings in the Court below, and there is no exception relating thereto. It is therefore not before us.

The judgment of the Circuit Court is reversed and the cause remanded for the entry of judgment in accordance with the foregoing.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE, concur.