FOR OFFICIAL PUBLICATION



IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

March 03, 2020

TAMARA CHARLES
CLERK OF THE COURT

### SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST.CROIX

| | |
|---|---|
| CARMELO AYALA, | ) CASE NO. SX-08-CV-296 |
| | ) |
| Plaintiff, | ) **COMPLEX LITIGATION DIVISION** |
| | ) |
| v. | ) *** |
| | ) |
| LOCKHEED MARTIN CORPORATION, | ) Coordinated Under: *In re: Alumina* |
| individually and as successor-in-interest | ) *Dust Claims*, Master Case No. SX-09- |
| to MARTIN MARIETTA CORPORATION; | ) MC-031 |
| MARTIN MARIETTA ALUMINUM, INC.; and | ) |
| MARTIN MARIETTA ALUMINUM | ) |
| PROPERTIES, INC.; MARTIN MARIETTA | ) |
| CORPORATION individually and as | ) |
| successor-in-interest to MARTIN | ) |
| MARIETTA ALUMINUM, INC.; and MARTIN | ) |
| MARIETTA ALUMINUM PROPERTIES, INC.; | ) |
| MARTIN MARIETTA ALUMINUM, INC.; | ) |
| MARTIN MARIETTA ALUMINUM | ) |
| PROPERTIES, INC.; and GENERAL | ) |
| ENGINEERING CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Cite as: 2020 VI Super 32

**Appearances:**

**THOMAS ALKON, ESQ.**
Law Office of Thomas Alkon, P.C.
Christiansted, VI 00820
*For Plaintiff*

**KOREY A. NELSON, ESQ.**
Burns Charest LLP
New Orleans, LA 70130
*For Plaintiff*

**WARREN T. BURNS, ESQ.**
**DANIEL H. CHAREST, ESQ.**
Burns Charest, LLP
Dallas, TX 75202
*For Plaintiff*

**J. RUSSELL B. PATE, ESQ.**
The Pate Law Firm
St. Thomas, VI 00804
*For Plaintiff*

**KEVIN A. RAMES, ESQ.**
**SEMAJ I. JOHNSON, ESQ.**
K.A. Rames, P.C.
Christiansted, VI 00820
*For Lockheed Martin Corporation*

**GREGORY K. WU, ESQ.** (*pro hac vice*)
Shook, Hardy & Bacon
Kansas City, MO 64108
*For Lockheed Martin Corporation*

**EUGENIO W.A. GÉIGEL-SIMOUNET, ESQ.**
GS Law Offices, P.C.
Gallows Bay, VI 00824
*For General Engineering Corporation*

## MEMORANDUM OPINION

**MOLLOY,** *Judge.*

¶1 **BEFORE THE COURT** is a motion filed by Lockheed Martin Corporation ("LMC") for summary judgment based on the exclusive remedy provision of the Virgin Islands Workers' Compensation Act ("VIWCA"). LMC contends that it is immune from suit because one of its predecessors, Martin Marietta Corporation ("MMC"), acquired two of its own subsidiaries, Martin Marietta Aluminum, Inc. ("MMA") and Martin Marietta Aluminum Properties, Inc. ("MMAP") (collectively "Martin Marietta entities" or "Martin Marietta Defendants")), who paid workers compensation premiums and employed Carmelo Ayala ("Plaintiff" or "Ayala"). LMC contends that it "inherited" the Martin Marietta entities' coverage and their immunity from suit and, therefore, judgment should be entered in its favor. Ayala concedes that he worked for MMA and MMAP and that his claims against them are barred, but he counters that his claims against MMC should still proceed and opposes LMC's "inheritance" argument. Both parties failed to tailor their arguments to the evidence they submitted, however. Even though this case was designated as the lead case for purposes of deciding whether workers' compensation insurance coverage can be inherited by a

successor company, *see generally Ayala v. Lockheed Martin Corp.*, 67 V.I. 290 (Super. Ct. 2017), the Court does not have to resolve that issue for this case because the evidence shows that Ayala only worked for MMAP for less than a year and at the end of the time period when he claims he was exposed to bauxite and other industrial dusts. Thus, LMC's immunity defense may not apply. The record may support entering summary judgment on another ground, however, because the evidence also shows that Ayala worked at the St. Croix alumina refinery for less than a year and that may be insufficient as a matter of law to recover damages from LMC. So, the Court gives notice that it is considering granting summary judgment on its own, on grounds not raised by the parties. *Cf.* V.I. R. Civ. P. 56(f)(2)-(3).

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶2      Ayala commenced this civil action on June 9, 2008, claiming "continuous[] expos[ure] to bauxite dust containing silica, alumina dust, and asbestos dust and fibers" "[d]uring [his] employment...." (Compl. ¶ 3.) Ayala alleges that he "was employed at the alumina processing plant on St. Croix, U.S. Virgin Islands ... [b]etween 1972-1985." *Id.* ¶ 1. He also alleges that he "developed pneumoconiosis and ... has an increased risk of developing [an] even more serious and/or fatal disease or illness as a proximate result of his exposure ...." *Id.* ¶ 5. And he seeks damages, including punitive damages. from LMC (individually and as successor-in-interest to MMC, MMA, and MMAP) and General Engineering Corporation ("GEC"). He also named MMC individually and as successor-in-interest to MMA and MMAP, as well as MMA and MMAP individually, all of whom no longer exist. *Cf. In re: Alumina Dust Claims*, 2019 VI Super 139, ¶ 21 (*"Alumina Dust II"*) (noting that MMAP, MMA, and MMC "did not exist when the Plaintiffs filed their complaints ... ").

¶3      LMC appeared and filed an answer on its own behalf and on behalf of the Martin Marietta (*See* Def. Lockheed Martin Corp.'s Answer ¶ 4 ("Lockheed Martin admits that it is successor-in-interest to Martin Marietta Corporation, Martin Marietta Aluminum, Inc., and Martin Marietta Aluminum Properties, Inc.").) GEC also appeared and filed an answer but was later dismissed by stipulation in April 2012. In the interim, Ayala's case was grouped with several other cases under a master case, *In re: Alumina Dust Claims*, Master Case No. SX-09-MC-031, all involving former alumina plant employees claiming damages from alleged "'exposure to toxic dusts during their employment

at the former alumina refinery on St. Croix.'" *Alumina Dust II*, 2019 VI Super 139 at ¶ 6 (quoting *In re: Alumina Dust Claims*, 67 V.I. 172, 175 (Super. Ct. 2017)).

¶4 After the cases were grouped together and assigned to the same judge, LMC filed identical motions for summary judgment in every case asserting the workers' compensation bar as a defense. The Court (Willocks, J.) heard argument on the "inheritability" of workers' compensation insurance and gave the parties leave to file supplemental briefing. *Cf. Daniel v. Borinquen Insulation Co.*, SX-98-CV-192, et al., 2017 V.I. LEXIS 117 (V.I. Super. Ct. July 28, 2017). The Court later designated this case as the lead case to address that issue. And once the *Alumina Dust* cases were transferred to the Complex Litigation Division and reassigned to the undersigned judicial officer, this Court questioned—after considering a stipulation filed in the master case by some but not all Plaintiffs, attempting to dismiss some but not all Martin Marietta entities, and not the same entities from each case—whether all Martin Marietta defendants should be dismissed. *See generally Alumina Dust II*, 2019 VI Super 139. The Plaintiffs responded and agreed to dismissing the Martin Marietta defendants. LMC was given additional time to respond to the Plaintiffs' supplemental brief concerning successor liability but ultimately did not file a response.

## II.    LEGAL STANDARD

¶5 "The legal standard . . . for summary judgment is well established." *Greene v. V.I. Water & Power Auth.*, 65 V.I. 67, 72 (Super. Ct. 2016), *aff'd on other grounds*, 67 V.I. 727 (2017). "Motions . . . are governed by Rule 56 of the Virgin Islands Rules of Civil Procedure." *Hawkins v. Greiner*, 66 V.I. 112, 116 (Super. Ct. 2017). "Rule 56 requires the Court to 'grant summary judgment if the movant shows that there is no genuine dispute as to any material fact . . . .'" *Id.* (quoting V.I. R. Civ. P. 56(a)) (citing *Walters v. Walters*, 60 V.I. 768, 794 (2014)). "A fact is material if it can affect the outcome of the case." *Burd v. Antilles Yachting Servs., Inc.*, 57 V.I. 354, 360 (2012). And "'[a] factual dispute is deemed genuine if . . . a reasonable jury could return a verdict for the nonmoving party.'" *Hawkins*, 66 V.I. at 116 (quoting *Greene*, 65 V.I. at 73).

¶6 To carry its burden, the moving party must identify where "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact' that must be decided by a jury.'" *United Corp. v. Hamed*, 64 V.I. 297, 309 (2016) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (2008)). The moving party's initial burden may also be "met

by merely 'pointing out to the court that there is an absence of evidence to support the non-moving party's case.'" *Greene*, 65 V.I. at 73 (ellipsis and citation omitted). The party opposing summary judgment must "present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Chapman*, 58 V.I. at 436; *see also Alexander v. Alexander*, 65 V.I. 372, 378 (2016) ("Only if the movant meets this burden must the non-moving party introduce some evidence showing a genuine issue for trial.").

¶7 "The Court's role in deciding a motion for summary judgment is not to determine truth, but rather to determine whether a factual dispute exists that warrants trial on the merits." *Hawkins*, 66 V.I. at 116. Summary judgment is determined according to "the substantive law. . . ," *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 528 (citing *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 419 (2009)). Accordingly, all "facts, and all reasonable inferences drawn from them, must be viewed "in the light most favorable to the nonmoving party, and the Court must take the non-moving party's conflicting allegations as true if supported by proper proofs.'" *Greene*, 65 V.I. at 73 (brackets omitted) (quoting *Brodhurst v. Frazier*, 57 V.I. 365, 368-69 (2012)). But even "'a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law.'" *Burd*, 57 V.I. at 360 (citation omitted).

### III. DISCUSSION

¶8 LMC contends that summary judgment should be entered in its favor because Ayala "was an employee of Lockheed Martin's predecessors-in-interest during the time period for which Lockheed Martin's predecessors can he held liable for Plaintiff's claims." (Def. Lockheed Martin Corp.'s Mot. for Summ. Jgmt. 1, filed July 15, 2011 (hereinafter "Mot.").) LMC asserts that all of its "predecessors-in-interest—none of which currently exist—participated in the Virgin Islands Workmen's Compensation Fund." *Id.* Thus, Ayala's "claims . . . are barred by the exclusive remedy provision of the Workmen's Compensation Act. . . ." *Id.* Consequently, LMC argues that summary judgment must be entered in its favor.

¶9 Ayala does not dispute that the VIWCA "provide[s] . . . benefits to workers who are injured/disabled during the course of their employment." (Pl.'s Opp'n to Movant's Mot. for Summ. J. 2, filed Aug. 16, 2011 (hereinafter "Opp'n").) In fact, Ayala even concedes that he was an employee

of MMA and MMAP and, therefore, does not oppose granting summary judgment to them. *See id.* at 1 ("Through discovery it is clear that at the times Plaintiff has alleged tortious acts by Martin Marietta Aluminum, Inc. and Martin Marietta [Aluminum] Properties, Inc. he was an employee of the entities and they were 'insured employers' . . . and Plaintiff does not oppose dismissal of these named Defendants.").) But Ayala argues that even though he "worked at the Alumina Processing Plant facility on St. Croix . . . ." (Ayala Aff. ¶ 2, *attached as* Ex. A to Pl.'s Undisputed Facts, filed Aug. 16, 2011), he "was never an employee of [MMC]." *Id.* ¶ 4. And therefore, he opposes granting summary judgment to MMC and by extension, to LMC.

¶10 The problem here is that the evidence the parties submitted does not support their claims or defenses. First, Ayala alleged in his complaint that "at all relative times . . . [he] was employed at the alumina processing plant on St. Croix . . . [b]etween 1972-1985." (Compl. ¶ 1, filed June 9, 2008.) There is no factual dispute that the Martin Marietta entities operated the St. Croix alumina refinery plant between 1972 and 1985. (*See* Pl.'s Resp. to Movant's Undisputed Facts ¶ 8, filed Aug. 16, 2011 ("Plaintiff does not dispute the plant ceased operations on May 12, 1985.").) Thus, the relevant time period for this case is from 1972 to 1985. But the record does not show that Ayala worked on St. Croix at the alumina refinery for one or more Martin Marietta entities from 1972 to 1985. Instead, the record shows that he worked for MMAP in 1985, and possibly for MMA in 1981.

¶11 Because LMC, as the movant, has the burden, the Court begins with the evidence it submitted. In addition to submitting evidence regarding the corporate history of the Martin Marietta entities, LMC also attached as Exhibit E to its summary judgment motion, a CD-ROM containing a 458-page PDF document of spreadsheets dating back to 1972 with names and salaries of employees of Martin Marietta entities, including social security numbers and other information of the employees. From this 458-page document, LMC identifies two pages that support its "inherited" immunity defense: documents numbered St. Croix LKHM.000497 and St. Croix LKHM.000613. Document 000497 is page 113 of an October 22, 1981 spreadsheet with no names listed on it, while document 000613 is page 112 of a spreadsheet dated November 20, 1981, also with no names listed on it. Neither document shows that Ayala worked for any Martin Marietta entity and LMC failed to identify any other portion of the 458-page document in support of its motion. *Contra Chapman*, 58 V.I. 431 at

("The moving party must identify those portions of the record that demonstrate the absence of a genuine issue of material fact . . . .").

¶12    Nonetheless, even though courts do not have an obligation to scour their records to determine whether material facts are in dispute, *cf. Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 588 n.14 (2015) ("declin[ing] to scour through the record to determine whether any disputed issues of material fact may exist so as to preclude summary judgment . . . ."), the Court converted Exhibit E to a searchable document and searched for "AYALA" and also reviewed those spreadsheets listing MMA employees on St. Croix. Document number St. Croix LKHM.000313 lists an "M.C. Ayala" as an employee of MMA as of July 22, 1980, who worked in the "Special Metals" division. But no geographic location is listed for the Special Metals division and the spreadsheets do show employees at other Martin Marietta locations such as Torrance, California, Lewisport, Kentucky, and the Dalles, Oregon. More importantly, however, the social security number listed for "M.C. Ayala" is not the same as the social security number shown for Plaintiff on an itemized statement of earnings from the Social Security Administration, which Ayala attached as Exhibit B to his response in opposition.[1] Therefore, the Court finds that "M.C. Ayala" is not Plaintiff. Two other documents, numbered St. Croix LKHM.000495 and St. Croix LKHM.000611, list a "C. Ayala" as an employee of MMA working on St. Croix as of October 22, 1981, and November 20, 1981, respectively. However, these spreadsheets do not show employee social security numbers. Clock number 055581 is listed for "C. Ayala" on both sheets. The Court found no other results for "Ayala" or his social security number or the 055581 clock number in the 458 pages. From this evidence the Court cannot find it undisputed that "C. Ayala" is the Plaintiff and worked for MMA in October and November in 1981.

¶13    But Ayala did work for MMAP in 1985. Ayala's itemized statement of earnings shows that he worked for CA Lewisport, LLC ("CA Lewisport") from 1972 to 1984, and also for the Department of the Army between 1977 and 1979. And then in 1985, he worked MMAP. This fact is not in dispute. And the parties also agree that the Martin Marietta entities ceased all refinery operations on St. Croix in May 1985. Although the record does not reflect when Ayala started working for MMAP, the longest he could have worked for MMAP was five months, assuming he was hired in the beginning

---

[1] The records provided are for Carmelo **Ayalo**, not Carmelo *Ayala*. Either the complaint misspelled the Plaintiff's last name, the Social Security Administration inserted the wrong name, or the records provided are for a different person. The parties did not raise an issue. Therefore, the Court assumes the employment records of Carmelo Ayalo are Plaintiff's.

of January 1985, and worked through the end of May 1985. Viewing the evidence in the light most favorable to Ayala, the majority of time Ayala claims he exposed to industrial dusts, from 1972 to 1985, occurred **before** he was employed by MMAP.

¶14     If Ayala worked for a predecessor to LMC for six months or less, then LMC's workers' compensation defense may be a red herring and summary judgment might be improper.[2] The parties did not review the evidence, however. Instead, they assumed that Ayala, like other *Alumina Dust* Plaintiffs,[3] worked for LMC's predecessors throughout the duration of the time he claims he was exposed to bauxite and other industrial dusts. Because of this, the parties did not address how the Virgin Islands should approach the situation where a third-party, who is not immune from an employee's suit, later becomes that employee's employer. *Cf. Stayton v. Clariant Corp.*, 10 A.3d 597, 601 (Del. 2010) ("The dual persona doctrine, as used in workers' compensation jurisprudence, provides that "an employer may become a third person, vulnerable to tort suit by an employee, if—and only if—it possesses a second persona so completely independent from and unrelated to its

---

[2] LMC is correct that employers, generally, are immune from suits by their employees. *See* 24 V.I.C. § 284(a) ("When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer[.]"). But LMC failed to carry its burden here to show that the Martin Marietta Defendants' were insured. "[A] Certificate of Government Insurance Coverage constitutes '*prima facie* evidence' that an employer is insured under the VIWCA." *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 624 (2012) (citing 24 V.I.C. § 273(d)). But even the certificates themselves "only establish[] a rebuttal presumption that an employer is insured under the VIWCA," *Id.* at 625. And LMC did not submit such *prima facie* evidence here. Instead, LMC submitted an affidavit from Eddie L. Gaut, a former employee of Martin Marietta, who stated that he "reviewed documents from the Department of Finance from 1974 to 1980 and 1986 to 1989 . . . [which] reflect payments to the Workmen's Compensation Insurance Fund by . . . [MMA and MMAP]." (Gaut Aff. ¶ 23, filed July 15, 2011.) And Gaut concludes that MMA and MMAP never "experienced a lapse in workmen's compensation insurance coverage during the time periods when those entities owned and/or operated the St. Croix Alumina Plant." *Id.* ¶ 24. Ayala, for the most part, disputes Gaut's assertion because LMC failed to submit "evidence . . . from the Director of the Government Insurance Fund . . . ." (Pl.'s Resp. to Movant's Undisputed Facts ¶ 10, filed Aug. 16, 2011.) And Ayala wants to depose Gaut to test his recollection. Thus, it is not clear an employer's compliance with the VIWCA can be resolved on summary judgment, particularly when *prima facie* evidence is not submitted. *Cf. Der Weer v. Hess Oil V.I. Corp.*, SX-2005-cv-274, 2014 V.I. LEXIS 51, *11-12 (V.I. Super. Ct. Mar. 4, 2014). Whether the Martin Marietta entities were insured under the VIWCA is material and remains in dispute, even if LMC can "inherit" its predecessors' immunity from suit,

[3] Presumably for the same reason, Gaut's affidavit and LMC's arguments refer to exhibits filed in, and concessions made by counsel in **"THE ERWIN LA BAST CASE."** (Def. Lockheed Martin Corp.'s Stmt of Undisputed Facts in Support of Mot, for Summ. Jgmt ¶ 14, filed July 15, 2011.) Ayala is not a "plaintiff" in *La Bast v. Lockheed Martin Corporation, et al.*, Case No. SX-07-CV-502. *Cf. Arno v. Hess Corp.*, 2019 VI Super 140, ¶ 20 ("'All too often counsel conflate each other with their clients. Cases belong to the parties, not the attorneys.'" (brackets, ellipsis, and citation omitted)). Whatever facts La Bast agreed with or failed to dispute cannot be attributed to Ayala. *See id.* ¶ 39 (explaining that arguments, or concessions of an attorney in one case cannot be attributed to another party just because that party is represented by the same attorney).

status as an employer that by established standards the law recognizes that persona as a separate legal person.'" (footnoted citation omitted)); *see also Billy v. Consolidated Machine Tool Corp.*, 412 N.E.2d 934, 940 (N.Y. 1980) ("Inasmuch as plaintiff's action represents essentially an attempt to recover from third-party manufacturers through a suit against their corporate successor, plaintiff should be permitted to maintain the action, notwithstanding that the successor corporation is also an employer.").

¶15    But Ayala's own evidence does raise another concern. Even when the facts are viewed in his favor, Ayala's earnings statement may undermine his claim that he worked on St. Croix at the alumina refinery from 1972 to 1985 because his employer from 1972 to 1984 was CA Lewisport. LMC has not alleged that that CA Lewisport was a direct or indirect subsidiary of a Martin Marietta entity. *But cf. In re: Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 Bankr. LEXIS 2997, *1 & n.1 (Bankr. D. Del. May 3, 2010) (listing CA Lewisport, LLC as an affiliated debtor of Aleris International, Inc.). In fact, neither Ayala nor LMC explained who CA Lewisport was and whether it was a contractor at the St. Croix alumina refinery. If CA Lewisport was a contractor at the alumina refinery on St. Croix, then that might further undermine LMC's workers' compensation defense, even if the Court concluded that successor corporations could "inherit" immunity from suit. If CA Lewisport was not a contractor at the St. Croix alumina plant, then Ayala's evidence shows that he only worked on St. Croix for six months or less. Summary judgment might not be proper under the VIWCA, but on another "ground[] not raised by" LMC, V.I. R. Civ. P. 56(f)(2), namely that the length of Ayala's exposure on St. Croix is insufficient as a matter of law to state a claim against LMC. *Cf. Holcomb v. Ga. Pac., LLC*, 289 P.3d 188, 197 (Nev. 2012) (contrasting cases from other jurisdictions holding that any amount of exposure is recoverable); *see also Betz v. Pneumo Abex, LLC.* 44 A.3d 27, 49 n.25 (Pa. 2012) (collecting authorities).

¶16    This case was designated as the lead case for purposes of addressing LMC's inherited workers' compensation defense. But designating a lead case is counterproductive if the case the parties recommend is not sufficiently similar to the other cases. The employment histories of the *Alumina Dust* Plaintiffs will not be identical. But Ayala's employment history appears to be too different "to 'allow for a consistent decision to be made, without the prospect for inconsistent rulings.'" *Ayala*, 67 V.I. at 309 (emphasis and citation omitted). A different case will have to be

designated as the lead case, particularly if summary judgment must be entered in this case on grounds different than those LMC raised.

## IV. CONCLUSION

¶17    For the reasons stated above, the Court will deny LMC's motion for summary judgment. LMC failed to carry its burden to show that Ayala worked for LMC's successors during the relevant time period. The undisputed evidence shows only that Ayala worked for MMAP, a "grandchild" of LMC, for six months at the end of Ayala's alleged exposure period. Even if such a short period of time is sufficient to allow an employer to claim immunity for the years when an employer was a third-party, and even if the Court were to hold that a successor corporation can inherit its predecessor's immunity from suit, LMC further failed to show there is no dispute of material facts regarding the Martin Marietta entities' insurance coverage. However, because the undisputed evidence shows only that Ayala worked on St. Croix for six months, summary judgment may be proper on other grounds and notice is given by this Opinion. *Cf.* V.I. R. Civ. P. 56(f)(2)-(3) ("After giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party; or . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").

**Date:** March 3, 2020

**ATTEST:**
TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk
Dated: _____3/3/2020_____

**ROBERT A. MOLLOY**
Judge of the Superior Court