**MARK L. MILLIGAN, Appellant**
**v.**
**DAHLIA KHODRA, Appellee**
**MILLIGAN v. KHODRA**
D.C. Civ. App. No. 1999-136

District Court of the Virgin Islands

Division of St. Croix

September 30, 2004

*For Pro Se appellant*: MARK L. MILLIGAN, ESQ., St. Croix, U.S.V.I.

*For Appellee*: LEE J. ROHN, ESQ., St. Croix, U.S.V.I.

MOORE, *Judge of the District Court of the Virgin Islands*; BROTMAN, *Senior Judge of the U.S. District Court for the District of New Jersey, Sitting by Designation*, and STEELE, *Judge of the Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation*

**MEMORANDUM**

(September 30, 2004)

## I. INTRODUCTION

Appellant has timely appealed alleging that the trial court committed reversible error by: (1) finding a mortgage agreement was valid and enforceable despite its defective acknowledgment and attestation; (2) granting summary judgment against all his claims and defenses regarding the mortgage contract; (3) entering a judgment of foreclosure and sale without first deciding the amount of his indebtedness; (4) failing to enter default on his cross-claim against certain co-defendants; (5) denying his motion to dismiss the foreclosure action for appellee's failure to join other lien holders; and (6) setting a supersedeas bond of $40,000.00. Appellee counters the appellant's arguments and cross-appeals alleging that the trial court erred in deeming the mortgage unrecorded and subordinate to all subsequently recorded liens.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As a result of a divorce action, Milligan owed a balance of $41,635.51 in alimony to Khodra. *Mark L. Milligan v. Dalia Brenda Khodra-Milligan*, Terr. Ct. Fam. No. D129/1991. In lieu of a writ of execution, the parties negotiated a note where Milligan promised to pay Khodra:

> the principal sum of FORTY-ONE THOUSAND SIX HUNDRED THIRTY-FIVE DOLLARS AND 51/100 ($41,635.51) ... at nine percent (9%) interest, in accordance with the following terms and schedule:

> Amortized payments of principal over a period of four (4) years shall be made in forty-eight (48) equal, consecutive monthly payments of $911.68 each, payable on the 15th day of each succeeding month, with the first payment being due upon execution of this Mortgage in the amount of Five Thousand ($5,000.00) Dollars.

This note was to be secured by a second priority mortgage of two properties: No. 28-A King Street, and No. 198 Rosegate, Work & Rest, Christiansted, St. Croix, U.S. Virgin Islands.

In furtherance of the negotiations, Milligan went to the office of Khodra's counsel on March 1, 1994 to deliver the downpayment and sign the mortgage and note. Khodra's counsel was out of the office, so a staff member met with Milligan. The staff member took Milligan's $5,000 bank draft and asked him to review and execute the mortgage and note.

Milligan, a practicing attorney, reviewed and signed the mortgage and note with no witnesses or counsel being present. Some time afterwards, Milligan received copies of the note and mortgage. He noticed that the mortgage had been altered in two ways: (1) the mortgage now contained the purported signature of a single purported witness; and (2) an acknowledgment was signed by Khodra's counsel as "Notary Public." (Joint Appendix ["J.A."] at 40, 270.)

Milligan also received a payment schedule providing for the balance on the account, $36,635.51, to be paid in monthly-installments of $911.68 on the "15th day of each succeeding month" as provided in the note. (J.A. at 20, 41.) The parties agree that Milligan paid the installments of $911.68 on these days in 1994: March 24, April 20, May 19, June 22, August 11, September 21, October 19. (J.A. at 42; 156.) On February 14, 1995, Khodra's counsel served Milligan with a notice of default pursuant to the terms of the note. That same day, Milligan apparently made four payments of $911.68 in an attempt to bring the account current. (J.A. at 42.) On February 15, 1995, Khodra's counsel informed Milligan by letter that he still owed $61.60 in interest on these four past-due payments. (J.A. at 21.) On February 17, 1995, Milligan, under protest, paid the additional interest. (J.A. at 22.)

Alleging that Milligan was in default, Khodra sued in the Territorial Court on August 22, 1995 to foreclose the mortgage. (J.A. at 27-50.) Her initial complaint failed to name certain prior and subsequent lien holders. In his answer, Milligan asserted various defenses of waiver, duress and bad faith and argued that the mortgage was invalid. Milligan also brought a counterclaim against Khodra for collecting usurious interest charges. (J.A. at 11-12.) The parties filed cross-motions for summary judgment.

On November 2, 1995, Milligan paid the sum of $2,090.01 which represented the principal owed for February, March and April of 1995 under the payment schedule. (J.A. at 42; Appellant's Br. at 8-9.) Milligan contends that because this was a restricted payment on principal only, it is consistent with his counterclaim for usurious interest charges. (Appellant's Br. at 9.)

In a November 10, 1998 Memorandum Opinion and Order, the trial court granted "Summary Judgment for Foreclosure" for Khodra and denied Milligan's Cross-Motion for Summary Judgment. (J.A. at 267.) In the Opinion, the trial court found that: (1) the attestation and acknowledgment were defective; (2) despite these defects, the mortgage was still valid in the absence of fraud or duress; (3) foreclosure of the mortgage was appropriate; (4) however, the mortgage must be subordinated to all subsequent recorded encumbrances because it did not meet the statutory requirements for recordation; and (5) Milligan had failed to show the interest rates were usurious. (J.A. at 267-278.)

Khodra moved for entry of a judgment of $49,672.41 on February 2, 1999 which included all alleged interest, costs and attorneys' fees. (J.A. at 279.) On July 21, 1999, the trial court issued an initial order stating, inter alia:

> Plaintiff asserts that she is entitled to an overall judgment in the sum of $49,672.41 plus interest at $8.97 per day, for each day from February 28, 1999. However, this Court is uncertain as to how plaintiff has arrived at the figures presented. Thus, while this Court agrees that plaintiff is entitled to a deficiency judgement for the unpaid amount plus interest and attorney's fees, the Court cannot award a specific amount based on the figures and information presented by the plaintiff.

> In light of the foregoing, it is

> **ORDERED,** that plaintiff shall exercise her right of foreclosure on the mortgaged properties given as security for defendant's indebtedness; and it is further

> **ORDERED,** that after foreclosure, counsel for plaintiff shall present to the Court a detailed account showing a breakdown of the amount of the deficiency judgment and the method used to calculate same within ten (10) days after confirmation of the marshal sale; and it is further

> **ORDERED,** that counsel for the plaintiff shall file simultaneously with her calculations for deficiency judgment, an attorney's certificate, itemizing the date and services rendered, the time expended for each service and the hourly rate charged the plaintiff in her retainer agreement

(J.A. at 309-310.)[1]

On August 4, 1999, Milligan filed a Notice of Appeal to this Court. (J.A. at 312.) On August 6, 1999, the trial judge entered an Order Setting Appeal Bond in the amount of $40,000, which Milligan has also appealed. Among other issues on appeal, Milligan contends that both the July 21 Foreclosure Order and the August 6 Order were in error because the trial judge failed to adjudicate the amount of indebtedness before proceeding. On September 7, 1999, Khodra cross-appealed the court's finding that her mortgage was subordinate to later recorded liens. (J.A. at 317.)

Despite the pending appeals, preparations for the marshal sale of Milligan's property continued for a time. On August 26, 1999, Khodra filed a praecipe requesting that the Territorial Court Clerk issue a writ of execution. Milligan alleges that in support of her praecipe, Khodra misrepresented that the trial court had entered a monetary judgment of $51,875.21. (Appellant's Req. for Stay at 2.); (J.A. at 314-16, 352-58.) On September 3, 1999, the Clerk issued a writ in the amount of $51,875.21 specifying that $49,672.41 was for the November 10, 1998 Judgment, $50.00 was for costs, and $2,152.21 was for interest. On November 22, 1999, Milligan filed a "Motion to Quash Writ of Execution" arguing that it was unlawful because the trial court, in fact, had not awarded a specific amount as required by law. (J.A. at 322.) Khodra opposed the motion arguing that although the court "expressed uncertainty concerning the exact amount of the judgment, [it] agreed that [p]laintiff was entitled to a deficiency judgment for the unpaid amount plus interest and attorney's fees." (J.A. at 331.) The trial court never ruled on the motion to quash.

Based on the writ of execution, the Clerk of the Court issued a notice of marshal's sale scheduled for January 28, 2000 to Khpdra. On January 5, 2000, Khodra filed proof that it published this notice. (J.A. at 339.) The Territorial Marshal then attached Milligan's properties by recording the writ with the Office of Recorder of Deeds. (PC 701 pp 153, 159; Doc Nos. 4173, 4175). The marshal's sale, however, never occurred.

On January 27, 2000, the trial court issued a superseding order directing

---

[1]   The trial court superseded the underline portion in a January 27, 2000 Order.

that plaintiff shall present to the Court a specific amount owed and a detail [sic] account of the figures used to arrive at the overall total *before* exercising her right of foreclosure on the mortgaged properties given as security for defendant's indebtedness; and it is further

**ORDERED,** that if the amount after foreclosure is inadequate to satisfy the judgment, counsel for plaintiff shall present to the Court a detailed account showing a breakdown of the amount of the deficiency judgment and the method used to calculate same within ten (10) days after confirmation of the marshal sale

(J.A. at 350.) (emphasis added). Khodra subsequently presented her statement dated June 7, 2000 that Milligan owed $50,152.52. On June 14, 2000, the trial judge ordered that the defendant respond to this statement within twenty days.[2] No response from defendant is referred to in the record or appendix. Further, the trial judge still has not adjudicated the amount Milligan owes to Khodra on the note.

On August 2, 2000, the trial court re-affirmed its order setting the supersedeas bond at $40,000.00. On November 15, 2002, Khodra filed a praecipe asking the Territorial Court Clerk to issue a second writ of execution for the subject properties in the amount of $62,947.99 (July 21, 1999 Judgment $49,672.41, prejudgment interest $8,713.91, post judgment interest $4,511.67, and costs $50.00). On November 19, 2002, the clerk issued a second writ of execution. In a belated attempt to prevent execution of the writ, Milligan wrote a letter dated November 20, 2002 to the clerk of court challenging the validity of the praecipe. On November 29, 2002, the Territorial Marshal recorded the writ at the Office of Recorder of Deeds.

Milligan also moves this Court pursuant to Rule 8 of the Virgin Islands Rules of Appellate Procedure for an order staying execution of the trial court's July 21, 1999 and January 27, 2000 orders arguing that these orders do not include a "money award" as required by law, and that Khodra misrepresented this fact in both praecipes. Milligan also argues that Khodra "orchestrated" an improper issuance of writs by the Clerk of the Court predicated on an illusory money award. Milligan, therefore,

---

[2] This order appears between pages 23 and 24 in the joint appendix but is not numbered or referred to in the table of contents. We assume its authenticity, but it is unclear if the order was served on Milligan.

asks that this Court enter an order quashing both writs, and cancelling each respective recording with the Office of the Recorder of Deeds. Khodra responds that Milligan has failed to first bring this motion in the Territorial Court, and failed to pay the supersedeas appeal bond. In reply, Milligan asks this Court to treat his original motion to the trial court to quash the writ as satisfying Rule 8's requirement that this motion be brought first in Territorial Court.

## III. APPELLATE JURISDICTION AND STANDARD OF REVIEW

Although neither party argues otherwise, we must make a threshold determination whether the Panel has jurisdiction over the issues appealed. This appeal comes to us in the unusual posture of a final order authorizing foreclosure, but without a final judgment setting the amount of the debt on which the foreclosure is predicated. While we conclude that we do indeed have jurisdiction, the unique posture of this appeal demands a separate discussion of this Court's appellate jurisdiction.

As authorized by Congress in the Revised Organic Act of 1954,[3] the Legislature of the Virgin Islands has given this Court the jurisdiction to hear appeals from any judgment or order of the Territorial Court. *See* V.I. CODE ANN. tit. 4, § 33 ("The district court has appellate jurisdiction to review the judgments and orders of the territorial court in all civil cases ... .").[4] For reasons of judicial economy, namely, to avoid piecemeal appeals and to conform with the practice of the Courts of Appeals, we have voluntarily imposed the "final order rule" of the United States district courts and courts of appeals, thus judicially restricting the broad scope of this jurisdictional grant to final judgments and orders of the Territorial Court. We have interpreted section 33 as if it contained the "final decision" language of 28 U.S.C. § 1291. *See Virgin*

---

[3]    Section 23A of the Revised Organic Act, 48 U.S.C. § 1613a, provides that the "District Court of the Virgin Islands shall have such appellate jurisdiction over the courts of the Virgin Islands established by local law to the extent now or hereafter prescribed by local law ... ." The complete Revised Organic Act of 1954 is found at 48 U.S.C. § 1541-1645 (1995 & Supp. 2001), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2001) (preceding V.I. CODE ANN. tit. 1).

[4]    Section 33 also gives the District Court the authority to prescribe rules for appealing judgments and orders from the Territorial Court. *See* 4 V.I.C. § 33 ("The time within which an appeal must be taken, the manner of taking an appeal and the procedure on appeal shall be prescribed by rules adopted by the district court.").

312

*Islands ex. rel. Larsen v. Ruiz*, 145 F. Supp. 2d 681, 683 (D.V.I. 2000) ("We nevertheless have tended to interpret section 33, like 28 U.S.C. § 1291, as referring to <u>final</u> judgments and orders which confines the jurisdiction of the federal courts of appeals to 'final decisions' of the district courts.") (emphasis in original); *Government v. DeJongh*, 28 V.I. 153, 158-59 (D.V.I. 1993) ("the limitation on our appellate jurisdiction to appeals from final orders was established by judicial interpretation")).

We incorporated this judicial restriction in the comprehensive set of rules governing appellate procedure we promulgated for appeals from the Territorial Court in 1998 known as the Virgin Islands Rules of Appellate Procedure. Specifically, Rule 5(a)(2) implements this interpretation:

> To be appealable as of right, an order of the Territorial Court must either be final or must be classified within the following categories of interlocutory orders:
>
> (i) An interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or modify an injunction;
>
> (ii) An interlocutory order appointing a receiver or an order refusing to wind up a receivership or refusing to take steps to accomplish the purposes thereof, such as directing sales or other disposal of property.

V.I.R. App. P. 5(a)(2).[5]

The origins of the final decision rule can be traced at least as far back as 17th Century England. *See Metcalfe's Case*, 11 Co. Rep. 38a, 77 Eng. Rep. 1193 (K.B. 1615); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3906 (2d ed. 1992). In the United States, the first Congress included the rule in the Judiciary Act of 1789 when it allowed appeals only from "final judgments and decrees" of the district courts. 1 Stat. 73, 84.[6] Finding that the case law interpreting these federal

---

[5] Rule 5(a)(2) is consistent with centuries of common law interpretation and statutory fine tuning reflected in 28 U.S.C. § 1291 and 1292. Section 1291 limits appeals to "final decisions" and § 1292 sets out limited exceptions. The first clause of our rule incorporates the final decision rule and subsections 5(a)(2)(i) and (ii) mirror the exceptions the language of § 1292.

[6] This restriction survives today in 28 U.S.C. § 1291. *Midland Asphalt Corp v. United States*, 489 U.S. 794, 798, 103 L. Ed. 2d 879, 109 S. Ct. 1494 (1989); *see* 28 U.S.C. § 1291 (limiting appeals to "final decisions" of the district courts); *see also Cohen v.*

statutes provides persuasive guidance, we will interpret Virgin Islands Appellate Rule 5(a)(2) accordingly.

■ The final decision rule is a pragmatic rule intended to promote efficiency of the judicial process. Piecemeal appeals slow the trial court process. Interlocutory orders may be corrected by the trial court before a final order or they may become moot. In either case it would be a waste of judicial resources to allow appeals midstream. To avoid these results, the rule permits appeals only from a final order: one which "ends the litigation on the merits and leaves nothing for the Court to do but execute the judgment," *Catlin v. United States*, 324 U.S. 229, 89 L. Ed. 911, 65 S. Ct. 631 (1945); *see Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 28 V.I. 448, 998 F.2d 145, 150 (3d Cir. 1993) (A final decision is "one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, ministerially, the execution of the decree."); *see also Ortiz v. Dodge*, 37 V.I. 567, 571-72, 126 F.3d 545, 547 (3d Cir. 1997) (quoting *Catlin*, 324 U.S. at 233).

Typically, a decision will become final and thus appealable only after the trial court has adjudicated an amount of damages or other indebtedness.[7] Because it leaves the amount of indebtedness undetermined, the trial court's July 21, 1999 foreclosure order would not be a "final decision" under this definition, even though it orders an immediate sale and conclusively determines the judgment creditor's rights in the property. *See First National Bank v. Shedd*, 121 U.S. 74, 30

---

*Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546-47, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949) (interpreting § 1291 to allow immediate appeals of certain "collateral orders" which would otherwise evade appellate review); *see generally Bachowski v. Usery*, 545 F.2d 363 (3d Cir. 1976) (discussing the history of the rule and the statutory exceptions adopted to ameliorate sometimes harsh results).

[7] *See Republic Natural Gas Co. v. Oklahoma*, 334 U.S. 62, 68, 92 L. Ed. 1212, 68 S. Ct. 972 (1948) ("The requirement of finality has not been met merely because the major issues in the case have been decided and only a few loose ends remain to be tied up — for example, where liability has been determined and all that needs to be adjudicated is the amount of damages."); *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 311 n.3 (3d Cir. 2001) ("In general terms, a decision that fixes the parties' liability but leaves damages unspecified is not final, and the adjudication of liability is not immediately appealable."); *EEOC v. Delaware Dep't of Health & Social Services*, 865 F.2d 1408, 1413 (3d Cir. 1989) ("An order which establishes liability without finding the amount of recovery is generally not final."

L. Ed. 877, 7 S. Ct. 807 (1887) (decree of sale that could be executed at once is final because a purchaser would acquire title, final and irreversible against all parties to the dispute, despite any need for further adjudication); *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L. Ed. 404 (1848) (order directing property be delivered to bankrupt's creditors is final even though an accounting of rents and profits was referred to a special master); *Whiting v. Bank of the United States*, 38 U.S. (13 Pet.) 6, 10 L. Ed. 33 (1839) (decree of foreclosure and sale is final on the merits and later proceedings are but a means of executing the decree); *Ray v. Law*, 7 U.S. (3 Cranch) 179, 180, 2 L. Ed. 404 (1805) ("a decree for sale under a mortgage, is such a final decree as may be appealed from") (*Marshall, C.J.); Citibank, N.A. v. Data Lease Financial Corp.*, 645 F.2d 333, 337-338 (5th Cir. 1981) (discussing the above cases and coming to the same conclusion); *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1101 (9th Cir. 1998) (same). Accordingly, the trial judge's order is not merely a "step towards final judgment in which they will merge." *Cf. Behrens v. Pelletier*, 516 U.S. 299, 313, 133 L. Ed. 2d 773, 116 S. Ct. 834 (1996).

■ Indeed, under relevant case law a litigant such as Milligan who failed to appeal from the foreclosure order and waited for a confirmation order or other action in the trial court may well find his right to appeal limited or barred entirely. *See, e.g., Whiting v. Bank of United States*, 38 U.S. 6, 13 Peters 6, 10 L. Ed. 33 (bill of foreclosure is final and can only be reviewed on timely appeal from the order of sale); *Leadville Coal Co. v. McCreery*, 141 U.S. 475, 478, 35 L. Ed. 824, 12 S. Ct. 28 (1891) (holding where creditor failed to appeal from an order directing sale of property he was barred from asserting any rights in the property on appeal from the confirmation order); *Citibank*, 645 F.2d at 338 (holding where creditor failed to appeal from an order of judicial sale but waited for the confirmation order, appellate review is limited to the confirmation order itself and jurisdiction to order the sale). The trial judge's order identifying the property to be foreclosed and directing immediate sale thus is final for purposes of Virgin Islands Appellate Rule 5(a)(2), even if the amount of indebtedness is left to be adjudicated.[8]

---

[8] This is not the case where the trial judge must take some further action before the foreclosure order can be enforced. *See Burlington C.R. & N.R.R. v. Simmons*, 123 U.S. 52, 31 L. Ed. 73, 8 S. Ct. 58 (1887) (foreclosure decree not appealable where further action of the court is required before it can be carried into effect); *see also Digital Equip.*

The July 21, 1999 Order clearly 'left something more to be done,' but it also ordered an immediate foreclosure of specified properties and for that reason it is a final decision over which we exercise jurisdiction.[9] We review the trial courts findings of fact for clear error. 4 V.I.C. § 33. Our review of the Territorial Court's application of law is plenary. *See Nibbs v. Roberts*, 31 V.I. 196, 204 (App. Div. 1995).

## IV. DISCUSSION

### A. The Trial Court Erred in Finding that the Mortgage is Valid

The trial court found that "in the absence of a specific statutory requirement," the defective acknowledgment does not affect the validity of a mortgage. Alternatively, the trial judge found that the mortgage was still valid through the doctrine of estoppel by using a legal test enunciated in another jurisdiction's common law. (J.A. at 275-276) (citing *Harris v. Walbridge*, 488 So. 2d 881 (Fla. Dist. Ct. App. 1986). On appeal, Milligan argues that because there is a specific statutory mandate that attestation and acknowledgment are required for the formation and execution of a conveyance, namely 28 V.I.C. §§ 42 and 84, the trial court erred in finding the mortgage to be a valid conveyance. (Appellant's Br. at 10-11.) We agree.

Under the laws of property, the act of acknowledging instruments is "wholly statutory," so we must look to our local statutes. 1 AM. JUR. 2D *Acknowledgments* § 5 (1994). The statutes in some jurisdictions require

---

*Corp. v. Desktop Direct*, 511 U.S. 863 at 868, 128 L. Ed. 2d 842, 114 S. Ct. 1992 ("the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the particular litigation at hand might be speeded, or a particular injustice averted") (internal quotations omitted).

[9] Further, because Milligan timely appealed from the July 21, 1999 foreclosure order, many of the trial court's actions after that time were void and without legal effect. "The timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction in a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal." *Venen v. Sweet*, 758 F.2d 117, 119 (3d Cir.1985); *see Main Line Federal Sav. & Loan Asso. v. Tri-Kell, Inc.*, 721 F.2d 904, 906 (3d Cir.1983) ("Filing a notice of appeal automatically transfers jurisdiction from the district court to the appellate courts."). Once Milligan appealed the trial court's July 21, 1999 Order, jurisdiction over this case transferred to the Appellate Division. Therefore, the trial court had no jurisdiction to enter the January 27, 2000 superseding order, requiring Khodra to submit a detailed accounting before exercising her right to foreclosure. Nonetheless, the trial judge did retain jurisdiction to set an appeal bond and to rule on the motion to stay the writ of execution.

acknowledgment "as a condition to the *validity* of the acknowledged instrument, and others prescribe acknowledgment merely for purposes of proof; to provide assurance that the document is authentic, and to provide a record for future reliance." *Id.* We must determine what the Legislature intended by our local statutory framework.

■ Section 41 of Title 28 of the Virgin Islands Code generally provides that:

> A conveyance of lands, or of any estate or interest therein, may be made by deed, signed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney and acknowledged or proved, and recorded as directed in this title, without any other act or ceremony.

Section 42 of Title 28 of the Virgin Islands Code provides the jurisdiction's attestation requirement:

> Deeds executed within the Virgin Islands of lands or any interest in lands therein *shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such;* and the persons executing such deeds may acknowledge the execution thereof as provided in chapter 5 of this title.

(emphasis added).

Section 84 provides the jurisdiction's acknowledgment requirement:

> The person taking an acknowledgment shall certify that the person acknowledging appeared before him and acknowledged he executed the instrument; and the person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment has satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

In *Simmonds v. Simmonds*, the Territorial Court found that a conveyance that did not meet section 42's attestation requirement could not pass valid and legal title:

> The words "shall be executed in the presence of two witnesses who shall subscribe their names to the same as such" indicate a manifestation of mandatory legislative intent. The Court is mindful, however, that civil statutes are liberally construed. Hence it looks to

317

other jurisdictions for guidance. A deed which purports to convey title in realty, signed by the grantor and delivered but not witnessed as required by statute, is in legal effect inoperative to pass legal title. *Niehuss v. Ford*, 251 Ala. 529, 38 So. 2d 484 (1949); *Golden v. Golden*, 256 Ala. 187, 54 So. 2d 460 (1951); *Walker v. City of Jacksonville*, 360 So. 2d 52 (Fla. App. 1978). Deeds so executed are generally treated as an agreement to execute an instrument passing legal "title" from grantor to grantee. See 26 C.J.S. *Deeds* § 35 (1956).

*Simmonds v. Simmonds*, 25 V.I. 3, 5 (Terr. Ct. 1990). In essence, the Territorial Court found that the instrument's validity was conditioned on a proper attestation under the statutory framework. In another case, the federal district court found that "an interest in Virgin Islands real property can be created only by [an instrument] 'executed with such formalities as are required by law.'" *S&S Servs., Inc. v. Rogers*, 35 F. Supp. 2d 459, 462, 40 V.I. 320 (1999) (citing 28 V.I.C. § 241). We find *Simmonds* and *Rogers* to be persuasive and conclude that, consistent with congressional intent, section 42 must be read to require valid attestation as one of the formalities required to convey an interest in real property under Virgin Islands law. The omission of such a formality is "fatal to the validity of the instrument, even as to the parties, and such an instrument conveys nothing." 1 AM. JUR. 2D *Acknowledgments* § 6 (1994). Therefore, Khodra's false addition of an attestation and acknowledgment ex post facto was insufficient to create a valid mortgage between her and Milligan.

Nor can we affirm the trial court's alternative holding that Milligan should be estopped from denying the validity of the mortgage. The trial court's reliance on *Harris v. Waldbridge* is misplaced in this instance. In *Harris*, the court interpreted its statutory framework as allowing parties to be liable for a mortgage absent the usual forms of proof of execution. *Id.* at 884. Because we interpret our statutory formalities as necessities, *Harris* is inapplicable. Therefore, Milligan cannot be estopped from raising these formalities, so the trial court erred in doing so. A contrary result would allow an estoppel theory to "swallow" our statutory requirements, doing violence to the intent of the legislature.[10] Consequently, we

---

[10]   Because we find this mortgage invalid, it could not have been recorded. Therefore, we need not address the parties' arguments regarding recordation of the mortgage.

find that the second mortgage on Milligan's two properties is invalid and unenforceable by the Court. However, Milligan's promissory note to Khodra remains effective as an acknowledgment of his debt. Therefore, the trial court may still award judgment on this unsecured debt upon remand.

Our finding that the mortgage is invalid renders a number of the other issues on appeal moot. Namely, whether the trial court erred in ordering judgment of foreclosure and marshal sale without adjudicating the amount of indebtedness, whether the trial court did not err in adjudicating foreclosure absent joinder of certain lienholders, and (as Khodra claims) whether the Court erred in subordinating the mortgage to all other lienholders. We need not consider these issues further.

## B. Whether the Trial Court Erred in Denying Milligan Summary Judgment on all Counts

### 1. Usurious Interest

In his March 12, 1997 counterclaim, Milligan sued for a declaratory judgment that Khodra charged a higher rate of interest than the note and local law allowed. (J.A. at 135-137.) Specifically, Milligan contended that Khodra's February 15, 1995 letter (J. A. at 21) assessing interest of 22 cents per day for installments that were past due was improper. (J.A. at 136.) On February 17, 1995, Milligan's payment of $61.60 in interest on his late installments was accompanied by his letter stating that such payment was "under protest and without prejudice." (J.A. at 22.)

The trial court granted summary judgment against Milligan's claims of usurious interest saying that he failed to offer any evidence to support his claim and finding that Khodra charged the legal rate of interest. (J.A. at 277.) The trial court, however, refused to accept Khodra's interest calculation of $8.97 per day on the judgment against Milligan because it was "uncertain as to how plaintiff [had] arrived at the figures presented." Having failed to determine the amount of interest due on the note, it is unclear how the trial court could have concluded that the amount charged does not violate the Virgin Islands usury law. *See* 11 V.I.C. § 954 (setting a nine (9) percent statutory maximum interest charge in most circumstances). Since we already remand the case for the trial judge to determine the amount of indebtedness, we will also remand Milligan's claim for usurious interest for more specific findings as to the interest charged and a determination of whether Milligan failed to raise a

genuine issue of material fact regarding the legality of that charged interest.

## 2. Duress

In his answer, Milligan raised an affirmative defense that the mortgage and note were void because they were induced by undue influence or duress. (J.A. at 14.) In support of his opposition to Khodra's motion for summary judgment, Milligan submitted his own affidavit saying that his March 1, 1994 execution of the mortgage and note was not voluntary but rather was induced by appellee's financial and personal threats. (J.A. at 54.)[11]

The trial court found that Milligan had:

> [F]ailed to prove or articulate a "colorable claim" that he executed the mortgage as a result of duress, fraud or undue influence, [footnote 5: Milligan's contention that no one was present when he signed the mortgage instrument is antithetical to his accusation that he executed the mortgage as a result of duress, fraud or undue influence. If no one was present as is conceded, how, when and where was the fraud, duress and/or undue influence exerted on Milligan to sign the documents.]

(J.A. at 276.) Milligan contends again that he raised a genuine issue of material fact. (Appellant's Br. at 16.) Khodra responds that the trial court's finding was proper and that Milligan has failed to allege any specific wrongful act that constituted duress. We agree that the trial court properly found no genuine issue of material fact, so we affirm its finding that there was no fraud, duress, or undue influence in Milligan's execution of the mortgage and note.

## C. Whether Trial Court Erred In Failing to Enter Judgment by Default Against Certain Co-defendants

Milligan contends that the trial court erred in failing to grant him default judgment on his cross-claim against Vincent Murray and Evelyn

---

[11] This affidavit also alleges genuine issues of material fact with regard to Milligan's several other affirmative defenses such as bad faith, overreaching, waiver, laches and estoppel. (J.A. at 54-56.) Milligan now argues on appeal that these issues should have withstood summary judgment. We find that the trial court duly considered these defenses (J.A. at 228) and implicitly denied their validity in granting judgment for Khodra.

Murray, the first priority mortgagees of Plot No. 198 Rosegate, Work and Rest, Christiansted, St. Croix. Milligan contends that he is entitled to a default under the Rules of the Territorial Court. TERR. CT. R. 47, 48. The trial court does not appear to have addressed Milligan's argument for default or to have anywhere indicated a reason for the omission. We will remand this issue so that the trial court may reexamine Milligan's argument for default.

### D. The Trial Court Erred in Setting a Supersedeas Bond of $40,000.00 Without First Adjudicating the Amount of Indebtedness

Milligan appeals the August 6, 1999 order of the trial court that, a

Notice of Appeal having been filed by the defendant, Mark L. Milligan in the above-mentioned case, it is hereby ORDERED that the appeal/supersedeas bond be, and the same is hereby set in the amount of FORTY THOUSAND DOLLARS and 00/100 ($40,000.00).

Milligan contends that this order setting bond was "plain error" because it was "in the absence of a judgment of foreclosure, which quantifies the amount of alleged indebtedness." (Appellant's Br. at 6.) Khodra responds that the bond set was proper because it was actually less than the amount required for the satisfaction of the judgment in full, when including costs, interest and damages for delay. (Appellee's Br. at 31.). Khodra also argues this Court will not usually disturb the trial court's chosen amount unless there is an abuse of discretion. *(Id.)* (citing *Prosser v. Prosser*, 907 F. Supp. 906, 908, 33 V.I. 115 (App. Div. 1995) (yielding to trial court's specifications for a supersedeas bond because of its familiarity with the case)).

We find that the trial court erred in setting a bond of $40,000.00, or any amount other than zero, without first adjudicating the amount of Milligan's indebtedness to Khodra. A 'supersedeas' bond is any form of security, whether in the form of cash, property, or surety bond, which a court may require "of one who petitions to set aside a judgment or execution and from which the other party may be made whole if the action is unsuccessful." BLACK'S LAW DICTIONARY 1289 (5th ed. 1979). In order to make the other party whole, such a supersedeas bond "must normally be in a sum sufficient to pay the judgment and costs, interest,

321

and damages for delay." 9 MOORE'S FEDERAL PRACTICE ¶ 207.02 *quoted in Patrick v. John Odato Water Serv.*, 767 F. Supp. 107, 109 n.3, 26 V.I. 361 (App. Div. 1991).

■ Here, the trial court could not have properly set such a sum for the bond, because it never finally determined Milligan's indebtedness. Instead, the court admits that it could not yet "award a specific amount based on the figures and information presented by the plaintiff." (J.A. at 309.) Khodra's response that the bond was less than the actual indebtedness only serves to support this proposition. We vacate the August 6, 1999 order setting a supersedeas bond and remand this case for the trial court to first enter a monetary judgment against the appellant and then if necessary, to set an appropriate supersedeas bond.

## E. The Writs of Execution are Legally Insufficient

■ We will also consider appellant's March 10, 2003 motion even though it was not "made in the first instance to the Territorial Court" because appellant has sufficiently shown that the "Territorial Court ... has failed to afford the relief which [he] requested" in failing to rule on his motion to quash the writ of execution. V.I. R. APP. P. 8(b). We agree that the clerk should not have issued the two writs of execution before the trial court properly adjudicated the amount of indebtedness. Section 473 of Title 5 of the Virgin Islands Code clearly states that the writ of execution "shall substantially describe the judgment, and if it is for money, shall state the amount actually due thereon." These writs could not state the amount actually due because the trial court had not yet decided that amount, as required by 28 V.I.C. § 531:

> A lien upon real property ... shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby, by an action of an equitable nature. In such action, in addition to the judgment of foreclosure and sale, if it appears that a promissory note ... for the payment of the debt has been given by the mortgagor ... *the court shall also adjudge a recovery of the amount of such debt against such person* ... as in the case of an ordinary judgment for the recovery of money.

(emphasis added). A plain reading of the statute clearly requires that the court "shall also adjudge a recovery of the amount of such debt" in any judgment of foreclosure where a mortgagor has given a promissory note.

322

So long as this provision is followed, the clerk will have the required information to issue a writ. Without a final adjudication of the amount due, a valid writ of execution cannot issue. Therefore, we direct the trial court to quash both writs of execution on the subject properties.

## V. CONCLUSION

We reverse the trial court's ruling that the mortgage was valid, so foreclosure on the properties is no longer appropriate. Therefore, we direct the trial court to quash the writs of execution. We also find that it was error to issue an appeal bond before the amount of debt had been determined and so the bond must also be quashed. This matter is remanded to the trial court so that it may make further determinations consistent with this opinion. In particular (but not in limitation), the court should adjudge the amount of Khodra's recovery against Milligan on the unsecured promissory note, make more specific findings regarding the proper rate of interest and claims of usery, and also address Milligan's claim for entry of default against the co-defendant first priority mortgage holders.