**ANDUZE ALEXANDER, Appellant/Defendant**

**v.**

**HILDA ALEXANDER, as Guardian of AUSTIN ALEXANDER,**
**Appellee/Plaintiff**

S. Ct. Civil No. 2016-0012

Supreme Court of the Virgin Islands

September 22, 2016

SUSAN BRUCH MOOREHEAD, ESQ., Smock & Moorehead, St. Thomas, USVI, *Attorney for Appellant.*

JUDITH L. BOURNE, ESQ., The Bourne Law Office, PLLC, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

### (September 22, 2016)

HODGE, *Chief Justice*. Austin Alexander executed a quitclaim deed purporting to convey a parcel of property to his son, Anduze Alexander on May 30, 2008, and recorded it days later on June 9, 2008. More than three years later, on August 9, 2011, Austin[1] initiated an action against Anduze to have the deed revoked. The Superior Court held that the deed conveying the property to Anduze was invalid because it only contained one witness's signature verifying the conveyance, instead of the two witnesses' signatures required by title 28, section 42(a) of the Virgin Islands Code, and granted Austin's motion for summary judgment invalidating the deed. We affirm.

## I. BACKGROUND

Austin, and his wife Josepha Alexander, purchased Parcel No. 200-7-1 Estate Altona & Welgunst, Kronprindsens Gade, St. Thomas, Virgin Islands ("the Property") in 1980. The deed was recorded in Austin's name only. Austin and Josepha raised their family — Anduze was their oldest son — in the residence located on the Property. At some point Josepha died and Austin eventually remarried, to Hilda Alexander.

In March, 2008, Anduze, who had been living abroad, returned to St. Thomas and began residing with his father at the Property. Some months later, Austin began the process of conveying the Property to Anduze. The two men went to a local bank, which held the original note and mortgage on the Property, and had a mortgage release prepared. Next, they went to the Office of the Recorder of Deeds, where they were provided with a sample deed illustrating how to convey property from one relative to another. Based on the sample, Anduze prepared a quitclaim deed transferring the Property to himself and had Austin sign the deed in the presence of a notary public, Constantin Fontana Constantin. Constantin's wife signed the deed as a witness. Attached to the deed was an affidavit, signed by Austin, attesting to being of "sound mind and judgment, and

---

[1] For the sake of clarity, individuals will be referred to by their first names when appropriate.

fully capable of making this affidavit" and that it was his intention to transfer the Property to Anduze.

Upon returning to the Office of the Recorder of Deeds, the parties were informed that the legal description of the Property was incorrect, and that the deed had to be attested by the Public Surveyor at the Cadastral Office. Also, they were required to obtain a tax clearance letter from the Department of Finance before the deed could be recorded. On May 30, 2008, the deed was corrected and the parties returned to Constantin to have Austin affix his signature. Once again, the notary public's wife signed as the only witness to the transaction. The parties obtained the tax clearance letter and returned to the Office of the Recorder of Deeds, where they were then informed that the deed needed two witnesses' signatures. In response, Austin asked his sister and nephew to sign as witnesses on the affidavit signature page attached to the deed, which they did on June 9, 2008. The deed was recorded later that day.

In 2011, Austin filed suit in the Superior Court to negate his conveyance of the Property to Anduze, claiming that he "did not understand that he was transferring ownership of the property and had no intention of conveying away his title to the property." (J.A. 36.) Instead, he claimed that his health had begun to deteriorate after multiple strokes, and that Anduze had induced him to execute the quitclaim deed under the pretext of paying property taxes. Notably, a few days before Austin filed this suit, his wife, Hilda, initiated a petition in the Family Court seeking guardianship for Austin, which was granted on November 9, 2011.[2] In a third amended complaint, filed on November 24, 2014, Austin included a new cause of action, claiming that the deed transferring the Property to Anduze "does not comport with the requirements of [local law] as there is a signature of only one witness." (J.A. 54.) It is on this cause of action alone that Austin, on August 5, 2015, moved for summary judgment and requested that the Superior Court declare the deed "void ab initio for nonconformity to statutory requirements." (J.A. 71-73.)

In response, Anduze moved to strike the motion for summary judgment on the basis that it failed to comply with Rule 56.1(a)(1) of the Local Rules of Civil Procedure of the District Court of the Virgin Islands by

---

[2] At some point not evident from the record before us, Hilda was substituted as plaintiff in this case, in her capacity as Austin's guardian. We nonetheless continue to refer to Austin as the plaintiff/appellee for purposes of simplicity.

failing to include a statement of uncontested facts and other supporting documents. Austin attempted to cure this defect by filing an amended motion for summary judgment with a statement of uncontested facts and supporting documents on September 25, 2015, which Anduze opposed on October 15, 2015. In his opposition, Anduze informed the court that he had contacted the notary public that had acknowledged the deed and had him sign an affidavit attesting that he had witnessed Austin sign the deed on May 30, 2008. Anduze also had the notary sign the original deed, as if he had affixed his signature at the same time as the other witness.

On November 13, 2015, the Superior Court conducted a hearing on all pending motions and at the conclusion, orally granted Austin's motion for partial summary judgment, which was reduced to writing in a December 15, 2015 *nunc pro tunc* order. The Superior Court first reasoned that Anduze's motion to strike for noncompliance with a local rule of civil procedure promulgated by the District Court must be denied pursuant to *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563 (V.I. 2015). *Id.* at 584 (holding that the Superior Court must "satisfy itself that the evidence in the summary judgment records supports" the motion for summary judgment, and not simply accept as true any uncontested facts from the moving party's motion due to a procedural defect) (quoting *Martin v. Martin*, 54 V.I. 379, 389 (V.I. 2010)). The court then denied Austin's amended motion for summary judgment — which was filed in an attempt to comply with the same local rule of civil procedure — for being filed out of time without a request for an extension of time and as moot. Finally, the court struck Anduze's opposition to the amended motion for summary judgment as having been filed out of time with no request for an extension of time to file. The court then granted Austin's motion for partial summary judgment, holding that he met his burden of proving that the deed failed to comport to the statutory requirements to effectuate a valid deed transfer. The court further commented that even if it were to consider the belatedly filed items, it would still grant Austin's motion for partial summary judgment because the notary's signature on the deed, despite an intent that the signature serve as a subscribing witness, was not an adequate substitute for actually signing the deed as a witness.

Anduze filed a motion to reconsider the granting of partial summary judgment, which the Superior Court denied in a written order dated December 15, 2015, relying on the same reasoning as announced during the November 13, 2015 hearing. On February 2, 2016, the Superior Court,

through the parties' stipulation, entered an order dismissing all remaining claims and counterclaims without prejudice. Anduze timely filed an appeal on March 1, 2016.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Pursuant to the Revised Organic Act of 1954, this Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d); *see also* V.I. CODE ANN. tit. 4, § 32(a) (granting this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court"). The Superior Court's February 2, 2016 order dismissed without prejudice all remaining counts — by the parties' stipulation — amounting to a final order.[3] *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 401 (V.I. 2008).

"Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error." *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 263 (V.I. 2012) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). We exercise plenary review over the Superior Court's decision on a grant of summary judgment. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014); *Vanterpool*, 63 V.I. at 584 (applying "the same test that the Superior Court should have applied" when reviewing the Superior Court's summary judgment decision). We review the Superior

---

[3] Anduze filed a notice of appeal on March 1, 2016. This is clearly within the 30 days allowed to appeal from the Superior Court's February 2, 2016 order granting the parties' voluntary dismissal motion. However, court confirmation is not necessary in all cases of unconditional voluntary dismissal, *see Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 611 (V.I. 2012), meaning that the parties' January 22, 2016 stipulation for voluntary dismissal may have been the appropriate order from which an appeal would lie. *See Judi's of St. Croix Car Rental*, 49 V.I. at 401 (unconditional stipulated dismissals are final orders that become effective upon filing) (citing *McCall-Bey v. Franzen*, 777 F.2d 1178, 1185 (7th Cir. 1985)). Nevertheless, the timeliness of Anduze's appeal has not been challenged, *see Gardiner v. Diaz*, 58 V.I. 199, 204 (V.I. 2013) (holding that a party's failure to object to the timeliness of a filing may result in waiver of that objection), and we decline to *sua sponte* address whether the parties' filing of the voluntary dismissal required court confirmation because we nevertheless retain jurisdiction. *Peters v. V.I.*, 60 V.I. 479, 481 n.1 (V.I. 2014) (explaining that time limits established by Virgin Islands Supreme Court Rule 5 are claims processing rules) (citing *Bryan v. Gov't of the V.I.*, 56 V.I. 451, 455 (V.I. 2012)).

377

Court's interpretation of a statute *de novo. Tutein v. Arteaga*, 60 V.I. 709, 714 (V.I. 2014) (citation omitted); *see Shoy v. People*, 55 V.I. 919, 925 (V.I. 2011).

## B. Summary Judgment

Anduze's main argument on appeal is that the Superior Court erred in granting partial summary judgment to Austin after concluding the deed was invalid because it did not have two witnesses' signatures attesting to the conveyance. "Summary judgment is a drastic remedy [and] should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." *Machado*, 61 V.I. at 379-80 (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)) (alteration in original). "In order to determine whether summary judgment was appropriate, we must analyze the Superior Court's decision in the context of the substantive law governing the cause of action." *Machado*, 61 V.I. at 380 (citing *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 528 (V.I. 2013)). In applying the facts to the law, we view the evidence, and any inferences therefrom, in the light most favorable to the nonmoving party, and take the nonmovant's allegations as true if properly supported by the record. *Machado*, 61 V.I. at 379. The movant bears the burden of demonstrating the absence of any genuine issue of material fact. *Martin*, 54 V.I. at 391. Only if the movant meets this burden must the non-moving party introduce some evidence showing a genuine issue for trial. *See Perez*, 59 V.I. at 527-28.

The Superior Court held that the May 30, 2008 quitclaim deed appended to the original complaint was ineffective to transfer the Property because it did not have two witnesses' signatures as required by 28 V.I.C. § 42(a). The court determined that Austin met his initial burden of demonstrating that there was no genuine issue as to any material fact, and since Anduze's opposition and motion to strike the motion for summary judgment was filed out of time, Anduze did not meet his burden of pointing to a specific fact on the record that would create a genuine issue of material fact. The court further held that even if it had considered Anduze's opposition, Anduze did not point to any fact that indicated the deed complied with statutory requirements. The court reasoned that:

> everyone realizes that real property is a very valuable asset, particularly in an island community where it is limited. And the [c]ourt de-

378

termines that following the language of the Code is important to ensure that when title is transferred that it is clear that all transfers have been done legally so that there is a clear chain of title as to all properties within the territory. That's the purpose of putting into the Code a specific mechanism for transfer.

So inasmuch as the transfer at issue in this matter was not done in compliance with the Virgin Islands Code, the deed does not comport and, therefore, was ineffective to transfer title[.]

(J.A. 23-24.)

■■ This Court has recognized that "a person may transfer ownership of real property during his or her lifetime 'by a deed of conveyance or other instrument in writing' that is 'signed by the person' doing the transfer or his agent 'and executed with such formalities as are required by law.'" *King v. Appleton*, 61 V.I. 339, 347 (V.I. 2014) (quoting *Harvey v. Christopher*, 55 V.I. 565, 574 (V.I. 2011)); 28 V.I.C. § 241(a)(2)). Multiple sections of the Virgin Islands Code apply to a conveyance of real property. When interpreting these statues, we must first "determine whether the language at issue has a plain and unambiguous meaning." *Brady v. Gov't of the V.I.*, 57 V.I. 433, 441 (V.I. 2012) (citing *In re Adoption of Sherman*, 49 V.I. 452, 456 (V.I. 2008)). "If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *Id.* (citing *Shoy*, 55 V.I. at 926). Furthermore, a statute must be read in relation to other statutory provisions, "making sure to avoid interpreting any provision in a manner that would render it — or another provision — 'wholly superfluous and without an independent meaning or function of its own.'" *Matter of Adoption of L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (quoting *Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012)).

One statute applicable in this case is the statute of frauds, which prohibits the transfer of an interest in real property unless the transfer is effected by operation of law, or by "a deed of conveyance or other instrument in writing, signed by [the grantor] . . . and executed with such formalities as are required by law." 28 V.I.C. § 241(a). The formalities required by law, in this case, appear in chapter 3 of title 28. *Harvey*, 55 V.I. at 574. Section 41 of title 28 provides that a conveyance "may be made by deed, signed by the person from whom the estate or interest is intended to pass, being of lawful age, . . . and recorded as directed in this

title, without any other act or ceremony." 28 V.I.C. § 41; *see King*, 61 V.I. at 347. Particularly, at issue in this case is section 42(a), which provides that:

> [d]eeds executed within the Virgin Islands of lands or any interest in lands therein shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such; and the persons executing such deeds may acknowledge the execution thereof as provided in chapter 5 of this title.

28 V.I.C. § 42(a).

■ The meaning of section 42 is plain; it requires that two separate individuals, who witness a person sign a deed, "subscribe their names to the [deed] *as such*." 28 V.I.C. § 42(a) (emphasis added). Thus, the plain language of the statute requires that two witnesses' signatures be affixed to the deed and identified as subscribing witnesses. *See McKoy v. DeSilvio*, 974 So. 2d 539, 540 (Fla. Dist. Ct. App. 2008) (holding deed invalid where signed by only one witness and a notary, as notary did not sign deed as subscribing witness).

Here, there is no dispute that Austin was of legal age to convey the property to Anduze. There is also no dispute that, when the deed was recorded on June 9, 2008, there was only one witness's signature subscribed thereto attesting to the conveyance. Although two other persons signed the deed — Anduze, in his capacity as grantee, and Constantin, in his capacity as notary public — neither person signed the deed as a subscribing witness. Thus, their signatures cannot be considered for the purpose of meeting the requirements of a valid deed transfer under section 42(a), which requires the subscribing witnesses sign the deed and be identified as witnesses on the face of the deed. Because the May 30, 2008 deed did not contain two witnesses' signatures, identified as such, it did not comport with the formalities of law to effectuate a valid transfer of property.[4] Therefore, by introducing a copy of the deed with only a single witness's signature, Austin carried the burden of demonstrating that

---

[4] Anduze notes that two relatives signed the affidavit that was recorded with the deed attesting to the fact that Austin was of sound mind and intended to make the transfer. However, Anduze concedes in his brief that he does not rely on these signatures to establish the validity of the deed.

the deed was not executed in conformance with law and was therefore ineffective to pass title.

The burden then shifted to Anduze to introduce some evidence that the deed was valid and effective to convey title of the Property to him. *See Perez*, 59 V.I. at 527-28. Anduze attempted to introduce an altered copy of the May 30, 2008 deed, which bore the recently-added signature of a second witness, but this altered deed was attached to Anduze's stricken opposition to Austin's motion for summary judgment. Anduze had — in an attempt to cure the defect of a single subscribing witness on the deed — caused Constantin, the notary, to add his signature to the original deed as a subscribing witness seven years later on August 18, 2015. Constantin also executed an affidavit swearing to the fact that he was present on May 30, 2008, and witnessed his wife, Austin, and Anduze sign the deed. The Superior Court concluded that Anduze did not meet his burden of showing some genuine issue of material fact since the motion had been stricken, and that, even if it considered the altered deed, it would have granted Austin's motion for summary judgment. This is because the altered deed did not rebut the evidence that the original deed, as recorded, bore only one subscribing witness's signature. In so holding, the Superior Court implicitly rejected Anduze's unilateral attempt to cure the defective deed.

Austin argues that this Court should affirm the Superior Court's decision because Anduze did not act to cure the defect within a reasonable period of time and acted only after the deed's validity had been contested in court. Austin also argues that Anduze's very actions to cure the deed's defect are evidence of the deed's ineffectiveness to transfer title, and therefore title must have remained with Austin until such time as the defect was cured, which for the sake of argument, was on August 18, 2015, when Constantin added his signature to the deed. Following this logic, Austin maintains that title to the Property necessarily remained with him in 2011, when he initiated this action in Superior Court to establish his title in the Property. Austin further argues it would be illogical to allow the signature of a third party to effectuate a conveyance of real property against the true owner's wishes, and for that reason, Anduze should not be allowed to cure the defect in the midst of litigation over the Property's ownership.

The Appellate Division of the District Court of the Virgin Islands determined that a "false addition of an attestation and acknowledgment ex

post facto was insufficient to create a valid mortgage." *Milligan v. Khodra*, 46 V.I. 305, 318 (D.V.I. App. Div. 2004). In *Milligan*, the grantor of a mortgage went to the grantee's attorney's office to sign the necessary documents, and did so out of the presence of the grantee's attorney. *Id.* at 308. However, when the grantor received copies of the documents, they contained the signature of a purported witness and the grantee's lawyer's attestation of the signatures. *Id.* The Appellate Division held that "[t]he omission of such a formality is 'fatal to the validity of the instrument, even as to the parties, and such an instrument conveys nothing.' " *Id.* at 318 (citing 1 AM. JUR. 2D *Acknowledgments* § 6 (1994)); *see also Simmonds v. Simmonds*, 25 V.I. 3, 5 (V.I. Super. Ct. 1990) ("A deed which purports to convey title in realty, signed by the grantor and delivered but not witnessed as required by statute, is in legal effect inoperative to pass legal title. Deeds so executed are generally treated as an agreement to execute an instrument passing legal 'title' from grantor to grantee." (citations omitted)).

■ Unlike certain other jurisdictions,[5] the Virgin Islands does not have a statute permitting a person to cure a deficiently executed conveyance. Thus, a conveyance executed within the Virgin Islands must comport with all of the "formalities as are required by law" to effectuate a valid transfer, which includes the signatures of two persons, identified as witnesses, who observed the grantor sign the deed. 28 V.I.C. § 241 (requiring that all deed conveyances be signed by the grantor "and executed with such formalities as are required by law"); *see also* 28 V.I.C. § 42(a). Nevertheless, Anduze cites to a case out of Florida — a state also requiring that a deed be executed in the presence of two subscribing witnesses — to argue that the subscribing witnesses do not need to sign the deed "in the presence of the grantors, or in the presence of each other." *Medina v. Orange Cty.*, 147 So. 2d 556, 557, 558 (Fla. Dist. Ct. App. 1962).

■ The deed in this case was signed, executed, and recorded entirely in the Virgin Islands, and thus this Court must apply Virgin Islands

---

[5] For instance, both Connecticut and Florida have a curative statute that may render an otherwise-invalid deed valid if certain conditions are met. *See, e.g., Collard & Roe, P.C. v. Klein*, 87 Conn. App. 337, 865 A.2d 500, 508 (2005) (noting that Connecticut General Statutes § 47-36aa acts to cure certain defects or omissions in a deed under certain conditions but holding that it did not cure the lack of two witnesses' signatures on the deed); *Earp & Shriver, Inc. v. Earp*, 466 So. 2d 1225, 1227 (Fla. Dist. Ct. App. 1985) (holding that the requisite passage of time cured an unwitnessed deed pursuant to FLA. STAT. ANN. § 95.231).

statutory law to determine whether the deed was effective to convey title to the property. 28 V.I.C. § 241(a); *Milligan*, 46 V.I. at 317-18. Section 42 states that "[d]eeds executed within the Virgin Islands of lands or any interest in lands therein shall be executed *in the presence of two witnesses, who shall subscribe their names to the same as such*[.]" 28 V.I.C. § 42(a) (emphasis added). But section 42(a) is silent with respect to when witnesses must subscribe their names to the deed, and the legislative history of section 42(a) provides little guidance on the matter. Section 42(a) was derived from the 1921 Codes, which were modeled largely on Alaska's territorial codes. *People v. Simmonds*, 58 V.I. 3, 5 (V.I. 2012) (quoting *Burch v. Burch*, 195 F.2d 799, 805, 2 V.I. 559 (3d Cir. 1952)); *see Ottley v. Estate of Bell*, 61 V.I. 480, 494 n.10 (V.I. 2014) (when statutes from other jurisdictions are substantially similar to a Virgin Islands statute, we may look to how courts of those jurisdictions have interpreted the similar statute for guidance (collecting cases)). Before their modification in 1953, Alaska's statutes contained the same witness requirement as our Code. *See Eadie v. Chambers*, 172 F. 73, 75, 3 Alaska Fed. 396 (9th Cir. 1909) ("[d]eeds executed within the district . . . shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such" (citing Civil Code of Alaska ch. 11, § 82 (Carter's Codes 1900))). Although authority is split, a majority of Alaska's opinions treat incompletely-witnessed deeds as effective under the territorial code. *Smalley v. Juneau Clinic Bldg. Corp.*, 493 P.2d 1296, 1299-1301 (Alaska 1972) (discussing case law under which a deed was required to bear the signature of two witnesses and providing examples of cases where a failure to witness a deed did not affect the validity of the deed); *Eadie*, 172 F. at 77 (finding "no error in the ruling of the trial court that the [unwitnessed] deed was sufficient to convey title" under Alaska's territorial code). Since incompletely-witnessed deeds could still pass title under Alaska law, it suggests that witnesses have some flexibility as to when they affix their signature to a deed under section 42(a).

Florida's conveyance statute is similar to our own in that it also requires that two witnesses affix their signatures to a deed purporting to convey property. *See* FLA. STAT. § 689.01. Similarly, it does not provide for when those witnesses must affix their signatures. *See id.* Interpreting this statute, Florida courts recognize that equity "regards done that which ought to have been done," and have concluded that a witness need not subscribe his or her signature to a deed at the time the grantor signs it, but

may do so within "a reasonable time" afterward. *Medina*, 147 So. 2d at 558; *accord Sweat v. Yates*, 463 So. 2d 306, 307 (Fla. Dist. Ct. App. 1984) (where two persons were present at the time a deed was executed, but signed their names to the deed as witnesses after the grantor died, there was a genuine issue of material fact as to the validity of the deed); *see also Hunt v. Smith*, 202 S.C. 129, 24 S.E.2d 164, 165-66 (1943) (where a statute required the signature of two witnesses but did not specify when the witnesses must sign, the second witness was permitted to sign the deed after the death of the grantor) (citing *Little v. White*, 29 S.C. 170, 7 S.E. 72, 74 (1888)).

 Logically, there will always be some delay between a grantor's signature and a witness's signature — even if the delay is measured in seconds or minutes — so the question of when a witness must sign a deed in order for the deed to comply with 28 V.I.C. § 42(a) is necessarily one of degree. Because some delay inheres in the witnessing of a deed, we conclude that subscribing witnesses must, in a timely fashion after the grantor signs the deed, be identified on the deed as witnesses and affix their signatures thereto. It is insufficient to prove a deed's validity, as Anduze attempted to do, through a person's affidavit attesting to the fact that they witnessed the grantor sign a deed conveying property and could have signed the deed as a witness, as an affidavit does not comply with the statutory requirement that the individual sign the deed as a subscribing witness. *Milligan*, 46 V.I. at 318 ("A deed which purports to convey title in realty, signed by the grantor . . . but not witnessed as required by statute, is in legal effect inoperative to pass legal title.") (quoting *Simmonds*, 25 V.I. at 5). We also reject Anduze's belated attempt to unilaterally cure the defective recorded deed, as Constantin did not sign the deed in a timely fashion when he signed the already recorded deed seven years after purportedly observing Austin sign it.[6] Therefore, we affirm the Superior Court's grant of summary judgment.

## III. CONCLUSION

Accordingly, we affirm the Superior Court's order granting partial summary judgment as the original deed was defective to convey title of the Property due to the lack of a second witness's signature on the deed.

---

[6] Anduze never requested equitable relief from the Superior Court and we decline to address as part of this appeal whether reformation of the defective deed would have been possible.